[Cac. No. 1376.   Department One.—September 16, 1905.]

## S. B. SMITH, Administrator of Estate of Ann Thomas, Deceased, et al., Respondents, v. H. J. GOETHE, C. M. GOETHE, and H. J. GOETHE COMPANY, Appellants.

JOINT MORTGAGE—DECEASED MAKER—PURCHASE WITH MONEY LOANED TO ADMINISTRATOR — RIGHTS AGAINST ESTATE.—Money loaned to an administrator with which to purchase a mortgage executed by him jointly with the decedent, and the purchase thereof with such money, by the lender, is in legal effect a purchase for the administrator, in so far as respects the property of the estate. The only right of the administrator is that of subrogation to the rights of the mortgagee as against the estate, and to hold it as a mortgage against the estate to the extent of the money advanced by him. He can obtain no additional advantage to himself as against the estate, and cannot be permitted to foreclose the lien and acquire title to the property as against the estate.

ID.—CONSTRUCTIVE TRUST—FORECLOSURE OF MORTGAGE BY LENDER— AGENCY—FIDUCIARY RELATION.—Where a corporation loaned the money to the administrator and purchased the mortgage with such money, and acquired title by foreclosure against the property of the estate of the deceased maker, it must be deemed the agent of the administrator, and the estate is entitled to enforce a constructive trust against it, based on the fiduciary relation to the estate of the administrator and his agent.

ID.—PURCHASERS WITH NOTICE—RECONVEYANCES.—A constructive trust resting upon a fiduciary relation may be enforced not only against the parties occupying such relation, but also against purchasers with notice, who have no greater right than those occupying such relation, and are bound to reconvey on payment of the amount justly due upon the portion of the debt owing by the estate to the administrator.

ID.—JUDGMENT—STATUTORY REDEMPTION—TRUST NOT AFFECTED.— Neither the judgment of foreclosure as an estoppel nor the statutory right of redemption from the sale under foreclosure can operate to diminish or take away the right of the estate to enforce

the constructive trust against the purchaser at such sale and subsequent purchasers of the title with notice.

ID.—JOINT DEED OF TRUST—SALE BY TRUSTEE OF PROPERTY OF DECEDENT—REDEMPTION UPON ACCOUNTING.—A joint deed of trust executed by the administrator individually with the decedent under which possession of the property of the estate was delivered by the administrator to the agent corporation which foreclosed the mortgage, for the purpose of collecting the rents and paying off the debts, and a sale by the trustee under the deed of trust to another creditor having possession of the property under the same trust relation, are governed by the same principles of equity and constructive trust applicable to the sale under the joint mortgage, and the estate has a cause of action to redeem from such sale upon a proper accounting.

ID.—NATURE OF CONSTRUCTIVE TRUST—FAIRNESS AND INTENTION IMMATERIAL. — A constructive trust growing out of fiduciary relations does not depend upon the fairness or unfairness of the unauthorized disposition which the trustee attempts to make of the trust property, nor upon the existence of an intention to create a trust thereby; and it is immaterial whether the sale under the trust deed was or was not made for a fair price, or was or was not intended to benefit the estate by the application of rents to debts.

ID.—AUTHORITY OF ADMINISTRATOR—ESTOPPEL OF TRUSTEES.—Although the administrator could bind his interest in the estate as heir, subordinate to the rights of the estate, it is immaterial whether he had or had not authority to deliver the property of the estate in trust to pay its debts. In either case the party who gained possession of its property will not be allowed to dispute the trust obligations arising from the transaction by implication of law; and the subsequent creditor in possession under the same trust would be precluded from purchasing at the trustee's sale, and claiming title thereunder free from the trust.

ID.—REDEMPTION FROM SALES—INTERLOCUTORY DECREE—CODE PROVISION—DISCRETION.—In enforcing the right of the estate of the deceased to a redemption from the sales under the mortgage and trust deed, it is not essential under section 963 of the Code of Civil Procedure as amended, that an interlocutory decree should be entered, a right of appeal being merely given thereby in case one should be entered. The court has discretion in the matter, and may make a final decree, without any interlocutory decree.

ID.—ERRONEOUS DECREE FOR ESTATE—SEPARATE ACCOUNTING—DISTINCT LIENS UPON SEPARATE PARCELS—SEPARATE CONVEYANCES.—*Held,* that the decree rendered in favor of the estate is erroneous in regard to the amount required to be paid, and the interests required to be conveyed; that the liens under the mortgage and under the deed of trust, being separate and distinct, and upon differ-

ent parcels of land, it was improper to combine the two liens and require the payment of both to cover a reconveyance of the property by either; that there should be a separate accounting of the amount payable under each, and that a distinct decree should be entered for a separate conveyance of the property covered by the mortgage and of that covered by the deed of trust, upon payment, respectively, of the distinct amount found due from the estate under each.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

Devlin & Devlin, for Appellants.

A. L. Shinn, P. S. Driver, and White & Miller, for Respondents.

SHAW, J.—This is an appeal by the defendants from a judgment in favor of the estate of Ann Thomas, and from an order denying their motion for a new trial. The present plaintiffs are the administrators representing the estates of Ann Thomas and Frank Thomas respectively. The action was begun by Frank Thomas in his own behalf and as administrator of the estate of Ann Thomas, then deceased. Frank Thomas died after the judgment appealed from was entered, and his successor and personal representative have been substituted as plaintiffs. Judgment was given in favor of the defendants against Frank Thomas, and in favor of the estate of Ann Thomas against the defendants. No appeal has been taken by Frank Thomas or his representative from the judgment against him, and the rights of the estate of Ann Thomas, as against the defendants, are alone concerned.

A general demurrer to the complaint was overruled and the sufficiency of the facts stated to give a cause of action in favor of the estate of Ann Thomas is the first question presented for our consideration. The facts alleged are in substance as follows:—

Ann Thomas died on April 25, 1895, the owner of the south forty-five feet of lot 8 of a certain block in Sacramento, which for convenience is designated as parcel 5, and of the undi-

vided one half as joint owner with Frank Thomas of four
other parcels in the same block, situated in lots 1 and 8, and
for convenience designated as parcels 1, 2, 3, and 4. Prior to
her death, she and Frank Thomas had jointly executed a deed
of trust to certain parcels, to secure a debt of two thousand
dollars due to the Farmers and Mechanics' Bank, and a mort-
gage to one Cadwallader for thirty-four hundred dollars. It
is alleged that the deed and mortgage each included all of the
five parcels of land. Frank Thomas and Maggie Thomas
were the sole heirs at law of Ann Thomas. Soon after her
death Frank Thomas was appointed administrator of her
estate, and continued to act as such thereafter during all of
the transactions involved in the case. He became personally
indebted to other parties, and to secure his personal debts he
thereafter executed mortgages upon his interest in all of the
said five parcels of land, and included therein two other par-
cels owned by him in another block in the city; but as his
rights are not concerned it is unnecessary to refer to these
parcels further. On April 5, 1900, for the purpose of dis-
charging part of the indebtedness of himself and the estate of
Ann Thomas, Frank Thomas borrowed from Curtis, Car-
michael & Brand, a corporation, the sum of eighty-four hun-
dred dollars, and as security therefor executed to Brand, as
trustee for said corporation, a deed absolute in form to all
his interest in the said seven parcels of land, and at the same
time, and as part of the same transaction, executed a written
contract with Carmichael, who was acting in behalf of and
for said corporation, so far as his duty under the contract
was concerned. This contract, in legal effect, provided that
Carmichael should act as agent for Thomas to lease or rent
all of the interest of Frank Thomas in all of said real prop-
erty, collect the rents accruing thereon, insure the improve-
ments, and apply said rents, first, to paying his commissions
for making the loan, and as agent in collecting such rents;
second, to pay the insurance premiums; third, to pay the
interest or principal of the other mortgages on the prop-
erty aforesaid; fourth and fifth, to pay repairs and taxes
and other paramount liens; sixth, to pay interest on the loan
of eighty-four hundred dollars; and that the contract of
agency should continue until all indebtedness to the corpora-
tion was discharged. Thereupon, Frank Thomas delivered

to said Carmichael corporation the possession and control of all the above-mentioned real estate, including that of the estate of Ann Thomas, as well as his own, for the purpose of collecting the rents and applying the same to the payment and satisfaction of the said debts of the estate and of Frank Thomas; and thereafter that corporation and the H. J. Goethe Company, its successor, continued to control and manage all of said property, and to collect the rents thereof, under and in pursuance of the agreement aforesaid. The eighty-four hundred dollars loaned to Frank Thomas was apparently not delivered to him. It is alleged that it was used by the Carmichael corporation in the purchase of liens against the property aforesaid, including the mortgage to Cadwallader (alleged to cover parcels 1 to 5, inclusive), and that assignments of said liens were taken to Carmichael, as agent for his corporation, as security for the said sum of eighty-four hundred dollars. The H. J. Goethe Company subsequently became the owner of other liens on the property, the amounts whereof were unknown to plaintiff. Carmichael, in his own name, sued to foreclose the Cadwallader mortgage, joining as defendants to the action Frank Thomas, individually and as administrator of the Ann Thomas estate, and the H. J. Goethe Company. On October 25, 1901, while the foreclosure suit was pending, the Carmichael corporation sold and transferred to the H. J. Goethe Company the mortgage to Cadwallader, the eighty-four-hundred-dollar mortgage of Frank Thomas, and all its other claims and demands against Frank Thomas, for ninety-five hundred dollars, and agreed that the H. J. Goethe Company should thereafter be entitled to all rents due or collectible from the property covered by the mortgages. Judgment of foreclosure of the Cadwallader mortgage was obtained in the name of Carmichael for the corporation, after this agreement and transfer to the H. J. Goethe Company, and the judgment was thereupon assigned to the H. J. Goethe Company in fulfillment of the agreement to transfer. From and after October 25, 1901, the H. J. Goethe Company collected the rents of said property and applied the same to its own use. That company had full notice of all the rights of the estate of Ann Thomas at the time it made the agreement with and purchase from the Carmichael corporation. On November 14, 1901, the trustees

named in the trust-deed aforesaid, in execution of the trust, sold parcels 3, 4, and 5 of the real estate, including the interest of Frank Thomas therein, as well as that of the estate, to the H. J. Goethe Company for $2,157.74, said company being at the time in the control and management thereof, pursuant to the transfer of October 25, 1901, made by the Carmichael corporation. On December 7, 1901, on foreclosure sale under the judgment foreclosing the Cadwallader mortgage, parcels 1 to 5, inclusive, of the real estate were sold to the H. J. Geothe Company. It is then averred that "by virtue of" the mortgages and liens held by the H. J. Goethe Company, and of the "money advanced by said company in purchasing" parcels 3, 4, and 5, at the trustee's sale, the estate of Ann Thomas became indebted to said company in an amount to plaintiffs unknown, which was wholly unpaid; that plaintiffs had made due effort to settle with the said company and redeem the said property from the mortgages, liens, and obligations against it, held by said company, but that said company claimed to own the said property in fee and denied the plaintiffs' right to redeem, and that plaintiffs are able and willing, and offer to pay to said company all moneys due it upon such redemption. The prayer is for an accounting of the rents and profits received by the H. J. Goethe Company, for a determination of the amount owing by plaintiffs to that company, and for a conveyance of the property by that company to the estate, upon payment of the amount due, and for general relief. We have stated the averments of the complaint according to their legal effect, and have treated a statement of an act by or transfer to an agent, as if it were alleged to have been done or received by the principal.

. The purpose of the action obviously is to charge the defendants as involuntary trustees of the estate of Ann Thomas, deceased, with respect to the interest of the estate in the real property, to ascertain the amounts for which, as such trustees, the defendants have a lien or charge upon such interest, and to obtain a reconveyance upon payment thereof. There are no allegations that there was any fraudulent intent or bad faith towards the plaintiffs on the part of either of the defendants, and the case must be considered as free from that element. The defendants are purchasers with notice, and consequently have only such rights against the estate as

the Carmichael corporation would have had if there had been
no transfer by it to the defendant corporation.

The eighty-four hundred dollars which the Carmichael cor-
poration loaned to Frank Thomas became in equity the prop-
erty of Thomas as soon as it was thus loaned. Its subsequent
use by the Carmichael corporation to purchase the Cadwal-
lader mortgage was in legal effect a purchase of that mort-
gage for Thomas, so far as it affected the property of the
estate. The corporation could by such purchase acquire no
greater rights against the estate than Frank Thomas would
have had if he had purchased the property directly with his
own funds. The mortgage was made jointly by himself and
the deceased to secure their joint debt. His own land was
bound for the moiety of the debt owing by the estate, and he
was also personally bound therefor as joint debtor. Hence,
with respect to the half which the estate ought to pay as
between the two joint debtors, he was in the position of a
surety for the estate, with his land mortgaged for its benefit.
In such case he would have the right to use the mortgage for
the purpose of fixing the rank of the mortgage debt as a
claim against the estate, and as a protection against subse-
quent liens by other parties upon the property of the estate,
if there were any, and, generally, to hold it as a mortgage
upon the property of the estate to the extent of the moneys
advanced by him on behalf of the estate in making the pur-
chase. In other words, be would be entitled to subrogation,
as against the estate, to the rights of Cadwallader, the mort-
gagee. (11 Am. & Eng. Ency. of Law, p. 119.) It is not
claimed that he had on hand, or as administrator was charge-
able with, any funds of the estate whatever. No duty rested
on him under such circumstances to advance money to the
estate or to buy claims against it and discharge them. He
could obtain no additional advantage for himself, as against
the estate, by so doing, nor make the purchase operate to the
disadvantage of the estate, but we perceive no reason why he
should not be protected by allowing him the benefit of the
debt and lien according to the *status* they had acquired prior
to his purchase. But he would not be permitted while acting
as administrator to bring an action against himself to fore-
close a lien thus obtained, or cause it to be done in the name
of an agent, and after obtaining a decree of foreclosure, and

purchasing the property of the estate at the foreclosure sale, to thereafter hold such property as his own. He was a trustee of the property of the estate for the benefit of the creditors and heirs. A trustee "may not obtain any advantage over" the beneficiaries "by the slightest . . . adverse pressure of any kind." (Civ. Code, sec. 2228.) He "may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner." (Civ. Code, sec. 2229.) Neither he nor his agent can take part in any transaction concerning properties in which he has an interest, present or contingent, adverse to the beneficiary, except by consent of the beneficiary, or order of the proper court. (Civ. Code, sec. 2230.) The trustee cannot enforce any claim against the trust property which he purchased after his appointment as trustee. (Civ. Code, sec. 2263.) The rule concerning such transactions is thus stated in Pomeroy's Equity Jurisprudence (vol. 3, 3d ed., sec. 1077): "As long as the confidential relation lasts the trustee, or other fiduciary, owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original *cestui que trust.* This prohibition operates irrespectively of the good faith or bad faith of such dealing. It is therefore a gross violation of his duty for any trustee or director, acting in his fiduciary capacity, to enter into any contract with himself connected with the trust or its management; such a contract is voidable, and may be defeated or set aside at the suit of the beneficiary. . . . If, however, the trustee's act, in violation of this rule, is not done in bad faith, and the beneficiary has received any benefit therefrom, it cannot be avoided without a restoration to the trustee of what has been thus received." Further, the same author says: "Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists *as a fact,* in which there is confidence reposed on one side, and resulting superiority and influence on the other." (2 Pomeroy's Equity Jurisprudence, 3d ed., sec. 956.) The

consequent application of these rules to the present case is, that if the administrator, Frank Thomas, had himself purchased the property of the estate at the foreclosure sale,— whether decreed in a suit by the original mortgagee, Cadwallader, or in a suit as above set forth,—he would not be allowed to claim title thereto adversely to the estate, but would stand charged in respect to the title, as trustee of the estate, and would be compelled to reconvey it to the estate upon payment to him of the amount equitably due him from the estate on account of the joint debt. The Carmichael corporation and Carmichael, its agent, in buying the mortgage with his money and foreclosing the same, must be regarded as the mere agents of Frank Thomas, and as such they could acquire no rights superior to those which would have accrued to him had he attempted to do the same thing in person. Of course, he could not have sued himself as administrator, but by procuring another to do it for him the nature of the transaction and its effect in equity is not changed. The agent who acted in his stead stands charged as trustee precisely as he would have been if the original mortgagee had foreclosed, and he, while he was the administrator, had bought at the foreclosure sale. The H. J. Goethe Company, having notice of all the facts, is in no better position, so far as its rights under the mortgage foreclosure are concerned, and is bound to reconvey on payment of the amount justly due upon the portion of the debt owing by the estate to Frank Thomas. The case is in many respects similar to *Raynor* v. *Mintzer,* 67 Cal. 159, [7 Pac. 431]. In that case the parties were chargeable as trustees because of their actual fraud; in this case, because of the legal relation of Frank Thomas to the estate; but the principle applies to all trustees alike, and in that case, as in this, the purchase was made by the intervention of a third person at the instance of the parties charged. We think the complaint states a good cause of action, so far as the transaction of the Cadwallader mortgage is concerned.

In view of what has been said, it is scarcely necessary to add that neither the statutory right to redeem from the foreclosure sale nor the effect of the judgment of foreclosure as an estoppel against the estate of Ann Thomas can operate to diminish or take away the right of that estate to charge the defendant company as trustee, for its benefit, of the apparent

legal title by that means obtained. By the principles of equity to which we have referred, it would be obliged to hold any legal title to the property of the estate, obtained by the attempt to enforce payment of these debts, as a title in trust for the benefit of the estate. The case of *Raynor* v. *Mintzer,* 67 Cal. 159, [7 Pac. 431], is authority for this proposition. Where the trust relation exists, the party charged as trustee cannot by any circuitous method, without the consent of the *cestui que trust,* free himself from the obligations arising therefrom.

The same principles of equity apply to the title of the H. J. Goethe Company, under the trustee's sale, of parcels 3, 4, and 5. It was, at the time of that sale, in possession of the interest of Ann Thomas in the property, having obtained such possession from the Carmichael corporation with full notice of the rights of the estate and the trust obligations of that corporation concerning the same. It does not clearly appear whether the agreement under which possession of the interest of Ann Thomas in the property was delivered to the Carmichael corporation was written or parol, express or implied. It is in substance stated, however, that the rents thereof were to be collected by that corporation and applied in satisfaction of the debts of that estate and of Frank Thomas. It was the duty of Frank Thomas in his fiduciary capacity as administrator to apply the rents accruing from the property of the estate upon its debts. Perhaps this would require the application to be made upon the debts generally, rather than upon these particular debts, but the defendants cannot insist upon this, nor take advantage of any lack of authority in Thomas to make the particular application which he directed, and, besides, it does not appear that the estate owed any other debts. From these facts it is necessarily implied that the portion of the rents arising from the interest of the estate would be applicable solely to the payment of the mortgage to Cadwallader and the debt secured by the trust-deed. The Carmichael corporation was therefore in possession of the property of the estate as trustee, for the purpose of collecting the rents and applying the same, in part at least, upon the debt secured by the trust-deed, and the H. J. Goethe Company, having notice of the trust relation at the time it acquired possession, would be bound by the same obligations

and would hold under the same trust. The transferee having notice of the facts, neither party to the transfer of possession could gain any additional rights adverse to the estate by means thereof. This constructive trust, imputed where confidential relations exist, does not depend upon the fairness or unfairness of the unauthorized disposition which the trustee attempts to make of the trust property, nor upon the existence of an intention to create a trust by the unauthorized transaction. (*Alaniz* v. *Casenave,* 91 Cal. 41, [27 Pac. 521]; *Wickersham* v. *Crittenden,* 93 Cal. 17, [28 Pac. 788]; 3 Pomeroy's Equity Jurisprudence, 3d ed., sec. 1077.) Hence it is immaterial whether the sale was or was not for a fair price, or whether the transfer to the Carmichael corporation for the purpose of having the rents applied on the debts was beneficial to the estate or not. It is immaterial whether Frank Thomas had or had not authority as administrator of the estate to make such a disposition of its property. If he acted without authority, the party who gained the unlawful possession thereby will not be allowed to dispute the trust obligations arising from the transaction by implication of law. The Goethe Company being in possession, under this trust to pay the debt secured by the trust-deed out of the rents received, was occupying a fiduciary relation to the estate, and, by the principles above stated, would be precluded from purchasing at the trustee's sale and claiming the title thus obtained free from the obligations of the trust. The fact that Frank Thomas, as heir of Ann Thomas, had inherited the title to one half of her lands, subject to administration, is immaterial so far as the trust here involved is concerned. His right as heir is subordinate to the rights of the estate. The most that the defendant corporation could ask by reason of their acquisition of such right would be to have a clause inserted in the decree to the effect that if upon final settlement of the estate of Ann Thomas there should remain for distribution any part of the interest of Frank Thomas, as such heir, in any part of this land or its proceeds, the said defendant would be entitled thereto. It follows that the facts stated also constitute a good cause of action to redeem the property of the estate from the sale under the trust-deed, and that the demurrer was properly overruled.

It is claimed that the court should have made an inter-

locutory order declaring the right to redeem, and directing an accounting as to the amount necessary to be paid for that purpose. This claim is made upon the ground that since, by amendment to section 963 of the Code of Civil Procedure, such an interlocutory order, if made, would be appealable, the effect is to make it imperative upon the court, in all actions to redeem, to make the interlocutory order, so as to give the opportunity to appeal. Obviously, the amendment was not so intended and has no such effect. It recognizes the fact that, although such practice is not contemplated by the Code of Civil Procedure, yet, by the practice in equity, the court in its discretion may make such an order, and it merely gives the right of appeal therefrom in case the order is made. The court is not bound to follow this practice, and in many cases it should not do so. Generally it will be found fully as convenient and conducive to justice, and less expensive to all parties, to proceed with the trial of all the issues, before making findings or rendering judgment upon any fact, and in such cases the proper course would be to proceed with the findings and judgment as in any ordinary action. But, in any event, it is a matter of discretion, and the amendment of the code has not changed the rule.

The court made a general finding that all the allegations of the complaint were true, but made certain specific exceptions which are important, because they show that the judgment given is not supported by the facts. According to these findings and the evidence, the trust-deed embraced only parcels 3, 4, and 5, and the Cadwallader mortgage covered only parcels 1 and 2. These were the only liens upon the interest of the estate of Ann Thomas. It was further found that the amount necessary to be paid to the Goethe Company by the estate of Ann Thomas to redeem the entire property, was the sum of $6,549.82, which sum included the amounts due on both of the liens aforesaid. Judgment was given to the effect that upon the payment of that sum the Goethe Company should reconvey to the Ann Thomas estate all of the five parcels, including the interest obtained by that company from Frank Thomas by his absolute deed, as well as that of Ann Thomas, deceased, as to which latter alone it is charged with the trust. This is manifestly wrong, both in the amount required to be paid and in the interests required to be conveyed.

It was also improper to combine the two liens and require a payment of both to obtain a reconveyance of the property covered by either. The liens, so far as the estate of Ann Thomas is concerned, are and have been entirely separate and distinct, and are upon different parcels of land. The right of the estate to redeem from either, and the corresponding obligation of the defendant, are not dependent upon the payment of the other. The defendant corporation had acquired absolutely the interest of Frank Thomas in all the land, in satisfaction of the debts due it from him, including other debts for which Ann Thomas never became liable. And that corporation was under no obligation to convey that interest to the estate of Ann Thomas, either upon payment of the debt or upon any other condition whatever. If that interest in any parcel had any value in excess of the one half of the joint debt for which such parcel was bound, the Goethe Company was entitled to the benefit of it. (Of course, we do not here refer to the interest of Frank Thomas as heir of Ann Thomas.)

After ascertaining that the interest of Frank Thomas and his part of the joint debts were thus disposed of absolutely, the court should have considered and settled the case with regard to the estate of Ann Thomas in the same manner as if the lien of the trust-deed had covered only parcel 5 and her half-interest in parcels 3 and 4; and had been for one half of the amount due thereon at the time of the transfer of possession to the Carmichael corporation, and should have adjusted the account by applying the rents, accruing from her interest, upon the amount due upon the one half of the original debt, which, in equity, as between Ann Thomas and Frank Thomas, she should have paid, and should have pursued a similar course concerning the debt and land covered by the Cadwallader mortgage. The defendant corporation is entitled only to the rights which Frank Thomas would have had against the estate if he had attempted to acquire the title himself; that is, to hold the interest of the estate in the respective properties as security for the respective moieties of the debts due from the estate. The two accounts should have been stated separately. In the Cadwallader mortgage account the Goethe Company should have been credited with one half of the amount actually paid for

CXLVII. Cal.—47

the mortgage by the Carmichael corporation out of the eighty-four hundred dollars loaned to Frank Thomas, with one half of all reasonable expenses paid and incurred by that corporation and the defendants for repairs, taxes, insurance, and otherwise, upon parcels 1 and 2 and with accruing interest on the amounts paid; and it should have been charged with one half of the rents received from said parcels by it and the Carmichael corporation from the time the latter took possession up to the time of trial. In the trust-deed account the credits should consist of one half of the amount paid at the trustee's sale, one half of all reasonable expenses paid or incurred for repairs, taxes, insurance, and otherwise upon parcels 3 and 4 for the time above mentioned, and all such expenses for that period upon parcel 5, and accruing interest; and the charges should consist of one half the rents from parcels 3 and 4 and all the rents from parcel 5, for the same period. The rents in each account should be applied first on expenses and then upon interest, the balances, if any, to go on the principal at the dates they may occur.

When the respective amounts were thus ascertained, the judgment should have been to the effect that upon payment of the amount found due from the estate upon the Cadwallader mortgage, the defendants should convey to the estate, or to the administrator or heirs for its use, the one-half undivided interest in parcels 1 and 2; and that upon payment of the amount found due from the estate on account of the debt secured by the deed of trust, it should in like manner convey the one-half interest in parcels 3 and 4 and the whole of parcel 5.

The findings furnish no details from which the respective amounts due from the estate on the respective liens can be determined, and a new trial will be necessary. We need not express any opinion concerning the sufficiency of the evidence to support the findings. In view of the material variances between the allegations and the proofs, as above pointed out, it will be necessary for the plaintiff representing the estate of Ann Thomas to amend his complaint, and leave to amend it, generally, should be given.

The judgment in favor of the plaintiff Frank Thomas, as administrator of the estate of Ann Thomas, deceased, against the defendants, and also the order denying the defendants'

motion for a new trial as against said plaintiff, are reversed; but such reversal shall not affect the judgment against Frank Thomas personally.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.