[Civ. No. 3207.    Second Appellate District, Division Two.—June 9, 1920.]

THE CALIFORNIA NATIONAL SUPPLY COMPANY (a Corporation), Appellant, v. GEO. BLACK et al., Respondents.

[1] PRINCIPAL AND AGENT — REPRESENTATION OF BOTH PARTIES — ADVERSE INTERESTS—VALIDITY OF CONTRACT.—While an agent may, with their full knowledge and consent, represent both parties to a contract, and his contract under such circumstances binds each within the scope of his employment, where an agent, without the full knowledge and consent of his principal, represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of his principal.

[2] ID.—SUBJECT MATTER OF AGENCY—INTERESTS OF AGENT—ASSUMPTION OF DUTIES.—An agent cannot, except with his principal's full knowledge and consent, assume any duties or enter upon any transaction concerning the subject matter of the agency in which he has individual interests, or represent interests adverse to those of his principal.

[3] CORPORATIONS—ISSUANCE OF STOCK NOT FULLY PAID UP—KNOWL-
EDGE OF CREDITOR—EVIDENCE.—In this action by a creditor against
the stockholders of a corporation to recover upon their liability for
the amount remaining unpaid on the stock held by them, there
was no evidence disclosing any information to plaintiff about the
corporation or that the stock held by defendants was issued to
them as fully paid-up stock.

[4] ID.—VALUE OF PROPERTY CONVEYED TO CORPORATION—BELIEF OF
STOCKHOLDERS — RIGHTS OF CREDITORS.—Assuming that the stock-
holders believed that the property transferred to the corporation
was worth an amount equal to the par value of the stock issued
therefor and that among themselves it was binding as "fully paid
up," this is not the case as to creditors.

[5] ID.—ADVERSE INTEREST OF AGENT — KNOWLEDGE NOT IMPUTED TO
PRINCIPAL.—The fact that the agent of plaintiff knew, at the time
he sold plaintiff's goods to the corporation of which defendants
were stockholders, that the stock held by defendants was issued
by such corporation as fully paid up, in consideration of the trans-
fer to it of certain property, did not charge plaintiff with knowl-
edge of that fact, where it did not have actual knowledge, and
such agent was also the agent of such corporation in the purchase
of the goods and was, at the time, a stockholder therein.

[6] ID.—ISSUANCE OF STOCK NOT FULLY PAID UP — LIABILITY OF
TRANSFEREES.—The fact that the defendants were the owners of
the stock which had been issued by the corporation without being
fully paid up rendered them liable to creditors of the corporation
for such unpaid balance, notwithstanding they had not subscribed
to or purchased the stock.

[7] ID.—LIABILITY FOR UNPAID SUBSCRIPTIONS—APPLICATION OF RULE
TO MINING CORPORATIONS.—The rule that where the stock of a
corporation is issued without being fully paid up, the amount re-
maining unpaid is, so far as its creditors are concerned, deemed
to be money due from the stockholders, and that a creditor, if the
corporation becomes insolvent, may apply, in equity, to have the
fund so deemed to be due to the corporation collected and applied
upon his debt, is applicable to mining corporations.

APPEAL from a judgment of the Superior Court of
Santa Barbara County.  S. E. Crow, Judge.  Reversed.

3. Issuance of stock at discount as affecting stockholder's lia-
bility for debts, notes, 5 Ann. Cas. 667; 8 L. R. A. (N. S.) 263; 51
L. R. A. (N. S.) 56.

Effect of creditor's knowledge that stock was improperly issued as
fully paid up on his right to resort to holder of same, note, 8
L. R. A. (N. S.) 271.

The facts are stated in the opinion of the court.

Flint & Jutten, H. S. MacKay, Jr., and Wm. G. Griffith for Appellant.

C. U. Armstrong for Respondents.

THOMAS, J.—According to the complaint in this action, plaintiff secured a judgment in the sum of $4,777.88 for goods, wares, and merchandise sold and delivered by it to the Cat Canyon Oil Company, against that company, previous to the commencement of this action; that an execution was thereafter duly issued and returned by the sheriff satisfied to the extent of $1,937.65, and no more—leaving a balance of $2,869.93 thereon unpaid and unsatisfied at the time of the commencement of this action; and that on two occasions subsequently executions were issued, and the sheriff of Santa Barbara County attempted to levy on property of the Cat Canyon Oil Company for such latter amount, but that upon each occasion the execution was returned wholly unsatisfied.

It is alleged that the Cat Canyon Oil Company was incorporated and organized with a capital stock of $500,000 divided into 500,000 shares of the par value of one dollar each. It also is alleged, "on information and belief," that prior to July 25, 1910, a certain lease of certain described land had been given by one M. J. McCroskey, as lessor, to L. M. McCroskey, as lessee, giving the latter the right to drill and to exploit the same for oils and minerals; that thereafter, and prior to July 25, 1910, this lease was assigned to one George Black, one of the defendants here; that on this latter date the value of the interest of the lessee in the lease was not to exceed the sum of $10,000; and that the directors of the Cat Canyon Oil Company knew this to be a fact at that time. It further is alleged, "on information and belief," that on July 25, 1910, the directors of the Cat Canyon Oil Company agreed with said Black that his interest in said lease should be transferred to that corporation, and in consideration therefor the latter would issue to N. B. Barker the remaining 499,975 shares of its said capital stock —twenty-five shares having previously been issued, five

shares to each of the five directors of said corporation. This agreement was carried out. But it is alleged "that the value of all the consideration received by said corporation for the issuance of said 499,975 shares of its capital stock was not, at any time, in excess of the sum of $10,000; that as incidental to said issuance of said 499,975 shares of said capital stock by said corporation and the directors thereof said corporation and said directors did assert, as a fact, that said 499,975 shares and all thereof were fully paid upon the issuance thereof as aforesaid;" that said directors knew said shares were not fully paid, inasmuch as the total consideration for the issuance thereof was property of a value not to exceed the total sum of $10,000; and that all of this was done fraudulently and with intent to defraud the public, and particularly the then and future creditors of the corporation.

The complaint further sets forth, on information and belief, that the defendants herein "have continuously been and now are the owners and holders in fact and according to the books and records of said Cat Canyon Oil Company, of the respective number of shares . . . set opposite their respective names, to wit: George Black, 9,500; L. B. Coblentz, 9,000; W. C. Oakley, 9,000; H. H. Jessee, 3,000; Frank Jessee, 3,000; Perry Jessee, 3,000; C. U. Armstrong, 9,000; and C. F. Black, 7,000"; and that the Cat Canyon Oil Company has at no time received, on account of said shares, "anything of value or consideration other than 52,500/499,975 of the sum of $10,000," which latter sum was the value of said lease.

Plaintiff asks the court to determine "the amount paid to the Cat Canyon Oil Company for the issuance from its treasury of each of the shares of its capital stock owned and held by the defendants herein; and that plaintiff have judgment against each of the defendants for the sum of $2,869.93, . . . but not to exceed the amount due from each defendant upon his subscription to the capital stock of said corporation."

A demurrer, general and special in terms, was interposed to the complaint, and by the court overruled. Defendants, except for the formal parts thereof, deny each and every material allegation of the complaint; and by way of separate and further defense allege: (1) That the cause of action

set up in the complaint is barred by the provisions of subdivision 2 of section 337, subdivisions 1 and 4 of section 338, subdivision 1 of section 339, section 343 and section 359 of the Code of Civil Procedure of this state; (2) that of the sum prayed for there has been paid by Joseph P. McDonnell the sum of $664.02, and by Theodore R. Finley the sum of $562.23; (3) that there was, when this action was commenced, and now is, another action pending between this plaintiff and certain of these defendants for the same cause of action as herein set forth; (4) that for value received the said L. M. McCroskey assigned, etc., all his right, title, and interest in and to said lease and option to George Black, one of the defendants herein, which lease, together with the assignment thereof, was thereafter duly recorded, and, on July 25, 1910, was in full force and effect and of great value, to wit, $100,000 or more''; (5) that the Cat Canyon Oil Company was an oil mining corporation, and organized for that purpose; that it had no land to operate or drill upon for oil; that with full knowledge of all the stockholders and directors thereof the said corporation duly and legally purchased said oil lease and option from said Black at the reasonable, actual, and agreed value of $100,000, and agreed to give and did issue and deliver to him and his associates in payment therefor 100,000 shares of the capital stock of said company, as fully paid, and no more; and that at the time said lease was sold to the Cat Canyon Oil Company the said corporation did not owe the plaintiff anything; and (6) that one Joseph McDonnell was a stockholder, director and secretary of the Cat Canyon Oil Company at all times set forth in plaintiff's complaint, and at all times during its corporate existence, and, at the time of the sale of the McCroskey oil lease to the Cat Canyon Oil Company, the said McDonnell was also a sales agent and officer of the plaintiff herein, and knew of all the facts and details of said sale or exchange, as already set forth; that plaintiff well knew said facts to be as aforesaid at the time it extended credit to the Cat Canyon Oil Company, viz., that said stock was so issued to defendants and sold at par value and issued as fully paid-up stock; and that plaintiff did not look to the said stock or the holders thereof, but to the corporation, the

Cat Canyon Oil Company, and its property assets, in extending said credit.

Upon the issues thus presented, the cause went to trial to the court without a jury. After due deliberation thereon the court found in favor of defendants, and judgment, from which this appeal is taken, was entered accordingly.

The evidence shows, among other things, that the defendant George Black, on or about July 10, 1910, made an offer in writing by the terms of which, if accepted, he agreed to exchange, "in full payment for the entire capital stock" of the Cat Canyon Oil Company, "excepting the shares subscribed by the incorporators," a certain lease, with option to purchase, which he held, of certain lands described therein. If accepted, according to the offer so made by him, "the entire capital stock, except the shares subscribed, is to be issued as follows: 499,975 shares par value of $1 (one dollar) each to be issued to N. B. Barker, Assistant Secretary, N. B. Barker to issue said capital stock as follows: Geo. Black, 100,000 shares; T. R. Finley, 25,000 shares; Jos. McConnell, 25,000 shares; N. B. Barker, 349,975 shares. N. B. Barker then to issue to Treasury acct. 200,000 shares; Hopkins, Moltman & Robbins, 50,000 shares; J. H. Robbins, trustee, 99,975 shares, which is to be reissued in connection with the sale of the treasury stock . . . ". This offer was duly and legally accepted by the Cat Canyon Oil Company "in full payment for all the unsubscribed shares of the capital stock of this corporation," the 499,975 shares of said stock were issued in accordance with the directions of the offer—being evidenced by certificate of stock No. 6—and the reissue of the stock, as set forth in the offer, was made by the assistant secretary accordingly.

Appellant urges that originally the stock held by each of these defendants was a part and parcel of said certificate No. 6, and that "the issuance to N. B. Barker of the 499,975 shares, in consideration of the transfer of the lease, was a subterfuge or device to make it appear as though the entire capital stock of the corporation was fully paid, or, in other words, that the corporation had received money or money's worth to the full par value of the stock." In the absence of evidence showing that the plaintiff knew of these facts before the credit was extended, we think this argument is sound. Did the plaintiff, therefore, have such notice?

[1]   The rule is that an agent may, with their full knowledge and consent, represent both parties to a contract, and his contract under such circumstances binds each within the scope of his employment. "But where an agent, without' the full knowledge and consent of his principal, represents the adverse party in a transaction, his contracts relating thereto are voidable at the option of his principal." (2 C. J. 838.)   [2]   And for the same reason the agent cannot, except with his principal's full knowledge and consent, assume any duties or enter upon any transaction concerning the subject-matter of the agency in which he has individual interests, or represents interests, adverse to those of his principal. (*Brown* v. *Spencer,* 163 Cal. 589, [126 Pac. 493]; *Smith* v. *Goethe,* 147 Cal. 725, [82 Pac. 384].) "He cannot, without the knowledge and consent of his principal, represent himself and the principal, where third interests conflict; he must not put himself into such a position that his interests become antagonistic to those of his principal." (2 C. J. 694.)   Public policy demands that this be so, that all temptation to neglect his principal's interests may be removed from the agent.

In the case at bar, the witness McDonnell was the agent of the plaintiff. He was at the same time the agent of the defunct corporation—having been its secretary during the life of that corporation. He was also a stockholder thereof. McDonnell was, therefore, attempting to represent the plaintiff here, the defunct corporation and his own interests as a stockholder. The interests of the defunct corporation and his own were adverse to those of the plaintiff; and unless the record here brings him within the rule above enunciated, his actions in reference to any dealings had with this plaintiff may not be binding upon it.

[3]   On August 5, 1910, without the authority of his principal, the plaintiff corporation, McDonnell sold and delivered to said defunct corporation, Cat Canyon Oil Company, supplies, etc., to the extent of $2,046.60. On the 13th of the same month the treasurer of the plaintiff corporation wrote to McDonnell, among other things, as follows: "I have asked you twice for a report on this account now, and of course unless I get satisfactory information and know that the company is all right, financially, we will not take their business. So if you want their business, the quicker

it is made satisfactory to the Treasury Department the better.'' On the 17th of the same month McDonnell answered this letter, purporting to give the treasury department of the plaintiff corporation the information sought. So far as material here, we quote from such answer as follows: ''I own 1/10 interest in this company for getting them the property, and as I do not have to put up a dollar and as I am secretary, it is of double interest to me to see that I am protected. We sold 300,000 shares of stock for $40,000, to be paid for not less than $5000 per month. Hopkins, Maltman & Robbins are very well thought of as brokers in San Francisco and throughout the country, and I am sure that with the payments started they will be kept up. At any rate they have got to be kept up, for as soon as they stop work stops.'' This is the only testimony, so far as we have been able to learn from the record—and we have read the whole of it—disclosing any information about the Cat Canyon Oil Company to the plaintiff. This letter reveals to the plaintiff corporation that its agent, McDonnell, was representing both parties, and incidentally himself, so far as his interests were concerned; but it shows nothing else. We do not think the reference to the sale of ''300,000 shares of stock for $40,000'' can be legitimately construed to mean ''fully paid up,'' or that creditors in good faith could not resort to any unpaid balance on the stock issued for any unpaid balance thereon. The evidence, on the other hand, discloses without question that this same McDonnell knew all about the whole transaction, before, at the time of, and ever since the incorporation of the Cat Canyon Oil Company, as well as the issuance of the 499,975 shares of stock in exchange for the lease. The par value of the shares so issued was one dollar each, or a total of $499,975. [4] There is evidence that the defendants, and each of them, believed that the property was worth ''at least $100,000.'' Assuming that among themselves it was binding as ''fully paid up,'' this is not the case as to creditors. ''The question concerns creditors only. As to them the corporation is presumed to have sought credit based upon its supposed capital . . . actually paid in or due from its stockholders. Public policy requires that the fact whether a particular creditor did trust the corporation on that basis should not be inquired into.'' (*Vermont etc. Co.* v. *Declez etc. Co.,*

135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057].)

[5] The evidence discloses the duplicity of McDonnell, not only in his dealings with plaintiff, but with his associates and fellow-stockholders in the defunct corporation. There is no doubt but that he deliberately kept the facts above recited from the plaintiff. As to his associates, we cite but one instance to show his attitude to them. In a letter written by him to the plaintiff he says, among other things: "I would suggest that upon receipt of this letter you immediately write Mr. Finley, Santa Maria, telling him that you had heard from me regarding this account, and that it is absolutely certain that the account be paid by January 1st. Make the letter good and strong; that will make him get in the harness and get in the money. . . . Make the letter strong enough so there will be no doubt left as to your intentions." Under these conditions we do not think the fact that McDonnell knew all about the transaction on both sides is sufficient, under the law, to charge plaintiff with such knowledge.

[6] There is no merit to the point urged by respondents, that the trust fund theory does not apply to a person who has not subscribed to or purchased stock. The fact that defendants owned the stock set forth in plaintiff's complaint fixed their liability. (*Vermont etc. Co.* v. *Declez etc. Co., supra.*)

The evidence here, giving it such construction as will be the most favorable to respondents, shows that the stock was actually sold at much below its par value. And this, in reality, is the question upon which the case turns. The fact is, as disclosed by the record, that the stock owned by defendants is a part of the 499,975 shares transferred in accordance to Black's offer, by direction of T. R. Finley, to N. B. Barker. [7] Where the stock of a corporation is issued without being fully paid up, "the amount remaining unpaid is, so far as its creditors are concerned, deemed to be money due from the stockholders. Such a creditor, if the corporation becomes insolvent, may apply, in equity, to have the fund so deemed to be due to the corporation collected and applied upon his debt. The fact that the stock is issued as fully paid up does not estop or bind the creditor, and in such a case, if it is not fully paid up, the

creditor may prove the fact and recover enough of the portion that is unpaid to satisfy his debt. No subterfuge or device by which it is made to appear as fully paid up when it is not will enable the stockholder to avoid this liability.'' (*Herron Co.* v. *Shaw,* 165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488].) This is conceded by respondents to be a correct statement of the law; but in their opinion it does not apply to a mining corporation, nor to one who has not subscribed to or purchased stock. This is only another way of arguing that incorporators of mining companies should be permitted to violate the law, while conceding that all others should be held to strict accountability. We know of no law, and none is called to our attention, supporting the application of such double standard. As we have seen, the contention is untenable. In our opinion the reasoning of the supreme court in the case just cited is applicable on every phase of the case at bar. We think that case determinative of the points raised on this appeal.

No other point raised, under these considerations, needs discussion.

Judgment reversed.

Finlayson, P. J., and Weller, J., concurred.