[Civ. No. 148.   Third Appellate District.—April 11, 1906.]*

ANGELO SANGUINETTI, Appellant, v. HANNETTE J. ROSSEN, P. ROSSEN, and EDNA ROSSEN, Respondents; ALTA DURHAM, and Mrs. LOUISE PLACE, Codefendants.

ACTION TO RECOVER SURVEYED LAND—MISTAKEN DESCRIPTION IN ANSWER—DEFENSE OF IMPLIED TRUST NOT VITIATED.—In an action to recover surveyed land described as sections 4 and 5 in township 1 *north,* range 18 east, M. D. M., where the answer by mistake described the same land as in township 1 *south,* but sets forth facts constituting a trust implied by operation of law as to seven-ninths of the property involved in the suit, and alleges that plaintiff and his predecessors in interest took with notice of the facts constituting such trust, the mistaken description in the answer is not fatal to the defense pleaded.

ID.—IMPLIED TRUSTS CREATURES OF EQUITY—FRAUD.—Implied trusts, resulting or constructive, are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit, or any other variety of fraud, actual or constructive.

ID.—FORMS DISREGARDED—SUBSTANCE—PRINCIPLES OF EQUITY.—In cases of implied trusts, forms will be disregarded, and equity will ascertain and act upon the substance of things, and will regard that as done which ought to have been done; and the far-reaching vision of equity cannot be obscured by devious and intricate methods, or by any pretense whatever, however ingenious, subtle or specious

---

*Owing to the confusion resulting from the San Francisco fire of April 18, 1906, this opinion was not published in its chronological order.

it may be. Equity abhors fraud in all of its guises, and renders abortive the shrewdest intrigues and machinations.

ID.—CONSTRUCTIVE TRUST AGAINST ATTORNEY—FIDUCIARY RELATION.— Where property was conveyed to a trusted friend for a specific purpose, and was by agreement of his clients transferred to their attorney for their benefit, he took the title subject to all the equities agreed upon and arising in favor of his clients, and being to them in a fiduciary relation, a constructive trust was created by operation of law for their benefit.

ID.—DUTY OF ATTORNEY TO DECLARE TERMS OF TRUST.—Even in the absence of an express promise to that effect, it was the duty of the attorney to his clients to execute a writing declaring the terms of the trust upon which he held the property.

ID.—BREACH OF DUTY—STATUTE OF FRAUDS NOT TO BE INVOKED.— Where the attorney made breach of his duty to declare the trust, he could not invoke the statute of frauds, and thus make his violated duty and promise the shield under which he could take advantage of his fiduciary relations, and profit by his own wrong. Equity never allows a statute designed to protect fraud to be used as an instrument for the accomplishment of fraud.

ID.—PARTIES IN FIDUCIARY RELATION—GOOD FAITH REQUIRED—INVOLUNTARY TRUST.—Equity holds persons occupying fiduciary relations to the strictest good faith, and never allows them to escape the performance of a duty through their own neglect, fraud or wrong. Under its wholesome rules, injustice resulting from fraud can always be protected, and trusts will arise in vindication of right, not only in the absence of a valid declaration, but against the desires and intentions of the involuntary trustee.

ID.—ATTORNEY HELD TO FULL MEASURE OF DUTY.—An attorney at law should be a paragon of fairness, honor and fidelity in all his dealings with those who place their trust in his ability and integrity, and he will be held to the full measure of what he ought to be. Had he retained the legal title obtained in the manner described in the answer, he could not be protected in his breach of duty, and allowed to retain that which was obtained through his guile.

ID.—PERSONS TAKING TITLE WITH NOTICE.—Those who took title under the attorney with notice of his relation to his clients, or knowledge of the facts, stand in his shoes, and have no greater modicum of right than he possessed.

ID.—INCONSISTENCY OF FINDINGS AS TO BENEFICIARIES OF TRUST.—*Held,* that the findings are inconsistent and conflicting as to beneficiaries of the trust, and that the evidence shows without conflict that the attorney was to reconvey the property to three specified beneficiaries in such proportion as their mother might suggest or as might be agreed upon.

ID.—FINDINGS UNSUPPORTED—PLAINTIFF NOT CHARGEABLE WITH NOTICE OF TRUST.—*Held,* that the findings by which it was sought to

charge the plaintiff with notice of the trust, or with notice of facts sufficient to put a prudent man upon inquiry, or that his grantors were the agents of plaintiff, acting under his authority in procuring title from the attorney of the beneficiaries, were without support in the evidence.

ID.—POSSESSION CONSISTENT WITH RECORD TITLE.—The possession of a grantor consistent with the record title is not sufficient to put a purchaser upon inquiry or impart constructive notice of any right or interest claimed in hostility to the terms of the deed.

ID.—BENEFICIARIES MUST SHOW A POSSESSION PUTTING PURCHASER UPON INQUIRY.—The beneficiaries, in order to avoid the result of their misplaced confidence in their attorney as against his grantees, must show a possession sufficient to put the plaintiff upon inquiry with regard to their equitable estate or interest in the property antagonistic to their recorded conveyance. *Held*, that such possession does not appear to be shown.

ID.—CLEAR AND DISTINCT FINDING ESSENTIAL.—*Held*, that the finding as to possession by the beneficiaries is not sufficiently definite and certain, and that there should be a distinct and positive finding as to the party or parties who were in the actual possession of the premises.

ID.—IRRELEVANT EVIDENCE.—*Held*, that certain instruments which were irrelevant should have been excluded; and the evidence of oral declarations made by the plaintiff after he had purchased the property, which do not clearly appear to be against his interest, were irrelevant and should be excluded.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. E. N. Rector, Judge presiding.

The facts are stated in the opinion of the court.

Nicol & Orr, for Appellant.

Loutitt & Middlecoff, and W. P. Netherton, for Respondents.

McLAUGHLIN, J.—Action to recover possession of a small parcel of land in San Joaquin county, described as being in sections 4 and 5, in township 1 *north*, range 8 east, M. D. M. The averments of ownership and right of possession in the complaint are denied in the answer, which also contains affirmative allegations of ownership in Alta Dur-

12 Cal. App.—40

ham and Mrs. Louise Place, who were made parties defendant by order of the court. The general averment of title in these defendants, under whom the other defendants claim the right to remain in possession of the premises, is followed by voluminous allegations detailing the facts and circumstances upon which such claim of title rests. A summary of the recitals will suffice to indicate and explain the legal propositions presented for decision. John J. Durham died intestate in 1882, and in due course of administration three-ninths of his estate was distributed to his widow, the defendant Hannette J. Rossen, two-ninths each to his daughters, the defendants Alta Durham and Mrs. Place, and the remaining two-ninths to a son who is not a party to this action. It is specifically and repeatedly alleged that a tract of land so distributed included the lot here in dispute, but the general description of such tract locates it in township 1 *south*, whereas the lot described in the complaint is in township 1 *north*.

After distribution, the widow mortgaged her interest to George B. Sperry, the daughter Alta hers to Mary Duffy and the remaining four-ninths, owned by Louisa Place and her brother, who were minors, was mortgaged by their mother, as guardian, to T. Lesnini. The Sperry mortgage was foreclosed and on September 25, 1900, the interest of the widow, embracing three-ninths of the property, passed to the mortgagee, who three days later conveyed the same to the Sperry Flour Company. An action was then pending to foreclose the other two mortgages, and Mrs. Rossen and her daughters were endeavoring to save the property, which was worth more than the amount due on the Sperry, Duffy and Lesnini notes. Negotiations were pending whereby they hoped to satisfy the existing encumbrances and procure a reconveyance of the title held by the flour company. They were not familiar with the effect of conveyances and had little experience in business matters. They had implicit confidence in two friends named Wiggin and Lynch, who advised and counseled with them at this juncture. Lynch acted as their attorney, and they relied upon him not only as a friend, but as their trusted legal adviser. Through his advice, counsel and representations, they were led to believe that if the title to the property was vested in one per-

son, a loan could be negotiated and the cancellation of the mortgages and reconveyance of the outstanding title secured. Acting upon such advice, and without any consideration save the promises made to them, the widow and her daughters, by deed absolute in form, dated October 19, 1900, conveyed all their right, title and interest in the property to Wiggin, with the distinct understanding that he would convey to Lynch. The latter promised to execute a writing reciting the terms of the agreement or trust, as soon as the deed to him was executed, such terms being that he would procure a loan of $9000, pay off the mortgages, procure a reconveyance from Sperry Flour Company, and this done, reconvey an undivided seven-ninths of the property to Alta Durham and Mrs. Place. Wiggin conveyed to Lynch on November 16, 1900, and some time thereafter the latter negotiated loans on the property aggregating the sum of $9000, obtained title to three-ninths of the property from the flour company and canceled the Duffy and Lesnini mortgages. It will thus be seen that Lynch's title to four-ninths of the property rested on the deed from Wiggin, and that title to three-ninths formerly owned by Mrs. Rossen came to him from her successor in interest, the Sperry Flour Company. It may be added that he succeeded Mrs. Rossen as guardian of the estate of the minor son and that the estate of his ward was mortgaged to secure a portion of the $9000 borrowed. Instead of fulfilling the promises made to his clients, Lynch conveyed an undivided seven-ninths of part of the property, including the lot in controversy, to Miller and Kelley, and they in turn conveyed to the plaintiff. It is alleged that Miller, Kelley and the plaintiff had notice of the facts and that the conveyances to them were made with intent to defraud Mrs. Place and Miss Durham. The agreement between the parties was never reduced to writing in any form, and the deeds through which the title passed to Lynch contained no hint or mention of a trust. The court overruled a demurrer to the answer based on the ground that the facts therein pleaded constituted no defense to the action, and the first point urged on this appeal is that the court should have sustained the demurrer.

In view of the distinct averment that the land in controversy was included in the tract distributed to the Dur-

ham heirs, we are of the opinion that the mistake in the general description was not fatal to the defense pleaded. The other proposition involved is more serious. Appellant argues that as the agreement under which the deeds to Wiggin and Lynch were executed was not reduced to writing, there was and could be no valid trust defeating the express terms of a conveyance absolute in form.

In this connection it is earnestly contended that the trust agreement was wholly abortive and void, because neither an agreement to convey, nor an express trust in land, is enforceable unless the same is evidenced by some note or memorandum in writing. This contention is met by the argument that the facts and circumstances set forth in the answer are sufficient to show an implied trust created by operation of law. A valid trust in relation to real property can only be created or declared by an instrument in writing, or by operation of law. (Civ. Code, sec. 852; Code Civ. Proc., sec. 1971.) As no instrument in writing declaring the trust was executed, no express trust was created, and it only remains to inquire whether the facts set forth in the answer are sufficient to bring the case within the rule governing implied trusts, resulting or constructive. Such trusts are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit or other variety of fraud actual or constructive. In such cases mere forms will be disregarded, and equity, as handmaid of the law, will ascertain and act upon the substance of things, regarding that as done which should have been done. Devious and intricate methods may be employed, but the mind-searching, far-reaching vision of equity cannot be obscured by any pretense however ingenious, subtle or specious it may be. Equity abhors fraud in all of its guises, and renders abortive its shrewdest intrigues and machinations. Looking at the substance of this transaction we find that Lynch was not only the trusted confidant and friend, but the legal adviser and counselor of these women. His relation to them was fiduciary, and every rule of equity and law commanded the utmost fairness and good faith in all his dealings with them. Through his advice and representations the legal title to four-ninths of this property was transferred to him, for a specific purpose, without any intention that any beneficial interest in the

property would pass or vest with the legal title thus conveyed.

We say transferred to him because the conveyance to Wiggin was made with the express understanding that he would convey to Lynch, and the moment this agreement was executed the latter took the title subject to all the equities arising in favor of the clients who conveyed. Under these circumstances a constructive trust was created, by operation of law, and Lynch took the bare, naked legal title to four-ninths of the property, as conveyed by the owners, Alta Durham and Mrs. Place, in trust for their use and benefit. But this is not all, for if the averments of the answer are true, he also took title to the Sperry interest in trust for the benefit of the same parties. But for his disregard of duty the trust would have been properly and fully created and declared, for even in the absence of an express promise to that effect, it was his duty to his clients to execute a writing reciting the terms of his trust. This being true, he could not invoke the statute of frauds, and thus make his violated duty and promise the shield under cover of which he could take advantage of his fiduciary relation and profit by his own wrong. Equity regards that as done which ought to be done, and never allows a statute designed to prevent fraud to be used as an instrument for the accomplishment of fraud. It holds persons occupying fiduciary relations to the strictest good faith, and never allows them to escape the performance of a duty through their own neglect, fraud or wrong. Under its wholesome rules injustice resulting from fraud can always be prevented, and trusts will arise in vindication of right not only in the absence of a valid declaration, but against the desires and intention of the involuntary trustee. (Civ. Code, secs. 3529, 2217, 2219, 2223, 2224, 2228, 2235; Pomeroy's Equity Jurisprudence, secs. 921, 960, 965, 966, 103, 155, 363–381, 858, 1044, 1053, 1055, 1056, 1297, 1409; Story's Equity Jurisprudence, secs. 1195, 307, 308, 310, 311, 312, 330, 331; *Brison* v. *Brison*, 75 Cal. 528, [7 Am. St. Rep. 189, 17 Pac. 689] ; *De Mallagh* v. *De Mallagh*, 77 Cal. 128, [19 Pac. 256] ; *Nordholt* v. *Nordholt*, 87 Cal. 555, [22 Am. St. Rep. 268, 26 Pac. 599] ; *Hays* v. *Gloster*, 88 Cal. 565, [26 Pac. 367] ; *Hayne* v. *Hermann*, 97 Cal. 261, [32 Pac. 171] ; *Kimball* v.

*Tripp,* 136 Cal. 634, [69 Pac. 428] ; *Jones* v. *Jones,* 140 Cal. 590, [74 Pac. 143] ; *Becker* v. *Schwerdtle,* 141 Cal. 390, [74 Pac. 1029] ; *Smith* v. *Goethe,* 147 Cal. 732, [82 Pac. 384].)

An attorney at law should be a paragon of candor, fairness, honor, and fidelity in all his dealings with those who place their trust in his ability and integrity, and he will at all times and under all circumstances be held to the full measure of what he ought to be. Equity would indeed be impotent if a trusted legal adviser could profit by withholding the benefit of his special knowledge and skill, or by giving false counsel during the continuance of a relation in the highest sense confidential and fiduciary. It was Lynch's duty to protect his clients in every possible way, and it was a gross violation of that duty for him to mislead or deceive them. Had he retained the legal title obtained in the manner described in the answer, the most adventurous sophist would hardly assert that he could be protected by his breach of duty and allowed to retain that which was obtained through his guile. And under well-settled rules those who took title under him with notice of his relation, or knowledge of the facts, stand in his shoes and have no greater modicum of right than he possessed. (Civ. Code, sec. 2243; *Jones* v. *Jones,* 140 Cal. 591, [74 Pac. 143] ; *Smith* v. *Goethe,* 147 Cal. 733, [82 Pac. 384] ; Pomeroy's Equity Jurisprudence, secs. 688, 364, 664, 692, 754, 770, 918, 1048.) It results from the foregoing that the demurrer was properly overruled.

The court adopted the findings returned by the jury and also made and signed findings of fact covering the issues in the case. These findings are in substantial accord with most of the averments of the answer. It is found, however, that Lynch was not a licensed attorney at the inception of the negotiations and transactions above narrated, but that he was at all times their trusted adviser and intimate friend.

Touching plaintiff's knowledge and notice of the equitable claim of the defendants Durham and Place, the court found that he and his grantors had information and knowledge as to who was in the actual possession of the premises, and of other facts and circumstances sufficient to put a reasonably prudent man upon inquiry as to the title to the premises. In this connection the findings recite that Mrs. Hannette J. Rossen was in possession, by leave and license

of her daughters, that Miller and Kelley were the agents
of plaintiff in the purchase of the premises, that all three
knew of such possession, and that plaintiff purchased for
value but with notice of the trusts and agreements alleged
in the answer. Many findings are particularly specified as
being unsupported by the evidence, but most of these as-
saults are groundless. The fiduciary relation existing be-
tween Wiggin and Lynch, and each of them, on the one hand,
and the three ladies who accepted their assistance on the
other, was fully shown. Lynch assumed to act as their hired
attorney, and they had many consultations with him as such,
in his law office and elsewhere. Under such circumstances
the rules governing the technical relation of attorney and
client apply as fully and forcibly as if he had been ad-
mitted to practice before such relation was assumed. (Pom-
eroy's Equity Jurisprudence, sec. 960.)

Findings 1, 13 and 14 by the court, and findings 15 and
16 by the jury are conflicting and confusing. In two of
these findings it is recited that Lynch agreed to reconvey
to Alta Durham and Mrs. Place; in another that such agree-
ment was to reconvey to Hannette J. Rossen, Alta Durham
and Mrs. Place, *or either of them,* and in still another that
such reconveyance was to run to the children of Mrs. Ros-
sen, "defendants herein." This latter finding would include
Edna Rossen and exclude John G. Durham, the minor son.
To add to the confusion, neither of these findings is sustained
by the evidence, which shows, without conflict, that Lynch
agreed to reconvey the property acquired by him to Alta
Durham, Mrs. Place and John G. Durham, or the "Durham
heirs" in such proportions as the mother might suggest or
as might be agreed upon. This being the uncontradicted
evidence touching the equitable claims of the defendants,
upon no possible view of the evidence can the finding as to
the quantum of interest owned by Mrs. Place and Miss Dur-
ham be sustained.

After careful examination and analysis we have reached
the conclusion that the findings tending to support the the-
ory that plaintiff took title with notice of facts sufficient to
put a prudent man upon inquiry must also fall as unsus-
tained by the evidence. We do not think the finding which
recites that Miller and Kelley were the agents of plaintiff,

acting under his authorization in procuring title from Lynch finds support in the record. True, he at various times had business dealings with them and had stated that he wanted to buy more land. But this did not constitute them his agents for the purchase of this or any specific tract of land for him. The evidence shows that they were dealing at "arm's-length" in the negotiations preceding the sale of this tract to him. He was entirely free to take the land or refuse to do so, according to his pleasure, and they would have violated no duty owing to him had they sold the land to any other person. This being true, there was no such agency as would charge him with knowledge or notice of all the information they possessed or might with reasonable diligence have acquired.

The fact that Mrs. Rossen was in possession of a very small portion of the land purchased by plaintiff was not, under the conditions disclosed by this record, sufficient to put the plaintiff upon inquiry touching the equitable claims of her daughters. Two deeds conveying all her right, title and interest in and to this property were of record. In the latest of these deeds she was joined by her daughters, who with her conveyed whatever estate or interest "as well in law as in equity" they then had or which they might subsequently acquire. The rule sustained by the weight of authority in the United States, is to the effect that the possession of the grantor is not constructive notice of any right or interest claimed in hostility to the terms of his deed. (Pomeroy's Equity Jurisprudence, sec. 617.) And even if it be conceded that the contrary doctrine announced in *Pell* v. *McElroy*, 36 Cal. 271, remains the rule in this state, still we hardly think such doctrine can be extended to a case where the grantor has expressly relinquished all equitable claims in his deed. Be that as it may, however, there is another rule which makes the possession of Mrs. Rossen impotent as far as constructive notice is concerned. It is well settled that when possession is consistent with the record title "it shall not be constructive notice of any addition or different title or interest to a purchaser who has relied upon the record and has had no actual notice beyond what is thereby disclosed." (Pomeroy's Equity Jurisprudence, sec. 616; *Schumacher* v. *Truman*, 134 Cal. 432, [66 Pac. 591];

*McNeil* v. *Polk,* 57 Cal. 323; *Smith* v. *Yule,* 31 Cal. 185, [89 Am. Dec. 167] ; *Kirby* v. *Tallmadge,* 160 U. S. 379, [16 Sup. Ct. Rep. 349].)

The record before us shows that the possession of Mrs. Rossen was perfectly consistent with the title appearing of record. On May 5, 1883, a tract of land including the dwelling and the lot on which it was situated was designated and set apart as a probate homestead for the benefit of the widow and minor children of John J. Durham, deceased. This controversy concerns the lot on which the home or dwelling of the Durham family stands. The rights conferred by this probate homestead could not be surrendered by one or more of the beneficiaries, to the detriment of the minor son who had not reached his majority when the deed to the plaintiff was executed. (*Moore* v. *Hoffman,* 125 Cal. 93, [73 Am. St. Rep. 27, 57 Pac. 769] ; *Hoppe* v. *Fountain,* 104 Cal. 94, [37 Pac. 894].) Therefore the minor son had a right to remain in possession of the homestead, and certainly his mother, as the natural guardian of his person, had a right to remain there with him. Aside from the rights of the minor son under the probate homestead, it must be remembered that he also owned an interest in the property, and the occupancy of Mrs. Rossen was by no means inconsistent with her duty or rights as the natural protector and guardian of her minor son holding such interest. Mrs. Rossen is claiming no equities, and an industrious search has failed to reveal an authority carrying the doctrine of constructive notice to the extent of holding that the possession of a grantor claiming no interest hostile to the title conveyed, could, under any state of facts, constitute constructive notice of secret equities claimed by other grantors, as beneficiaries of a constructive trust at variance with the terms of their conveyance absolute in form which purported to convey all equitable claims and interests. We are not unmindful of the point that Mrs. Rossen held possession as licensee of her daughters. This verbal license could hardly create a distinctive possession separate and apart from the possession which was in accord with the rights and interests of her minor son. "Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer." (Civ. Code, sec. 3543.) And in order to avoid the result of

their misplaced confidence in Lynch, it was necessary for Miss Durham and Mrs. Place to show a possession which would be sufficient to put the plaintiff upon inquiry touching *their* equitable estate or interest in the property antagonistic to their recorded conveyance. We do not think such possession was shown, and are furthermore of the opinion that the finding on this point is not sufficiently definite and certain. There should be a distinct, positive finding as to the party or parties who were in the actual possession of the premises.

As the case must go back for a new trial it is proper to say that the letter of Lynch to Mrs. Rossen dated February 28, 1902, should have been excluded, and that the notice to vacate the premises, dated March 8, 1902, should have shared the same fate. We do not think the evidence of Mrs. Rossen relating to conversations had with plaintiff *after* he had purchased the property, should have been allowed to remain in the case, when a timely motion to have the same stricken from the record was made. Oral declarations of a party should be viewed with caution, and declarations which do not clearly appear to be against the interest of the party making them should be excluded. We cannot see what bearing the deed from Gianelli to Lynch could have on the issues in the case, nor can we divine how the objection of Mrs. Rossen to a confirmation of the sale of her son's interest could be relevant to issues not involving the minor's rights.

The judgment and order are reversed.

Chipman, P. J., and Buckles, J., concurred.