[Civ. No. 15190.   Second Dist., Div. Three.   Oct. 4, 1946.]

PLXWEVE AIRCRAFT COMPANY (a Corporation) et al., Appellants, v. ALLAN D. GREENWOOD et al., Respondents.

Chas. L. Nichols and George Acret for Appellants.

Richard C. Hart for Respondents.

DESMOND, P. J.—It was charged in the second amended complaint, upon which this case went to trial, entitled "For an accounting, to establish a trust, and for declaratory relief," that defendants Murchison and Greenwood conspired to secure through their instrumentality and while acting in a fiduciary capacity, new financing for the benefit of the defendant Plxweve Manufacturing Company "and to secure for themselves the secret profits and advantages hereinafter set forth and in the manner and by the means of the unconscionable transactions hereinafter set forth." Judgment was entered in favor of defendants Greenwood, Murchison and Plxweve Manufacturing Company, a corporation, and from this judgment the plaintiff corporation, Plxweve Aircraft Company, and Ralph Hemphill, president thereof, have appealed.

Defendant Murchison is an attorney at law and for several years prior to 1940 had enjoyed the complete confidence of his client Ralph Hemphill, organizer of several aeronautical schools and a successful business man of large experience. In the latter part of that year, at the request of Mr. Hemphill, he incorporated Plxweve Aircraft Company and for several months thereafter continued to act as attorney for that corporation. The respondent Greenwood was the originator and developer of a new design for airplanes, sometimes referred to as the "geodetic" type. He had spent considerable time and money in attempting to develop this airplane in the vicinity of Portland, Oregon, and in the summer of 1940 had come to Los Angeles at the invitation of an engineer employed by Mr. Hemphill.

Various conversations took place between Greenwood and the employees of Hemphill, as a result of which it was agreed that a corporation would be formed to attempt the further development and completion of one or more airplanes of the design originated by Greenwood. The agreement reached with respect to the developing of the airplane was that Hemphill would furnish $30,000 cash, for which he would be entitled to receive 30,000 shares, or 60 per cent, of the 50,000 shares of stock permitted to be issued in the new corporation. Greenwood was to transfer his interest in and to the design for a geodetic type airplane to the corporation, for which he was to receive 20,000 shares, or 40 per cent, of the stock to be issued in the new corporation. Instead of having the 20,000 shares issued to himself, however, Greenwood distributed almost one-half thereof among persons who had assisted him financially and otherwise in Portland. Among these were Guy R. Harper, his son Richard or "Dick," and Kay Olesen. Mr. Hemphill did not take title to the entire 30,000 shares which he was to receive, but gave a certain portion of it to various employees of his and delivered 500 shares thereof to Mr. Murchison for his services in organizing and forming the Plxweve Aircraft Company. Immediately after the formation of the corporation work was undertaken to complete the development and construction of one or more of the geodetic airplanes, to be flown, proved and accepted. However, by March 15, 1941, the corporation was practically bankrupt, having expended all its available cash and being in debt for various expenses, the principal item of which amounted to approximately $15,000 due to Aero Industries Technical Institute, Incorporated, another corporation in which Hemphill owned a controlling interest. The only assets which the corporation had were its good will, its corporate name, certain engineering data concerning construction of wooden airplanes, approximately $741 worth of materials and small hand tools, and one geodetic type wooden airplane which had been completed to such an extent as to permit it to fly, but because of certain technical defects, had not been accepted by the Civil Aeronautical Authority. Mr. Murchison had purchased from Mr. Greenwood 1,271 shares of the corporation, for which he paid cash at $2.00 per share. This was done with the consent and approval of Mr. Hemphill. After failure of the new type airplane to receive official acceptance, estimates were furnished by Mr. Bates, an engineer employed by Hemphill,

which indicated that the necessary additional cost to have the plane completed and accepted would amount to $3,500. According to respondents, "appellant Ralph Hemphill emphatically and unequivocally announced that he would not put another cent into the project, and threatened to consider the whole matter closed and go to Mexico on a vacation." Efforts to obtain financing by a second issue of stock, priced at $2.00 per share, had not been successful, neither were efforts by Mr. Hemphill and others to raise new capital by other means.

At this juncture, Murchison, with the knowledge and consent of Mr. Hemphill, advanced approximately $2,000 over a period of several weeks to meet the payroll of the corporation. Meantime, on March 28, 1941, he addressed a letter to Mr. Guy R. Harper, who resided in Portland and was known to Mr. Hemphill as a director of the Plxweve Aircraft Company. This letter presented the facts in a light favorable to the obtaining of additional capital and was followed by other letters and long distance telephone conversations between Harper and Murchison, all relating to the same subject. Mr. Murchison discussed the matter with Mr. Hemphill and secured his approval of a plan developed by himself and Harper. This plan was outlined in a letter prepared by Murchison and submitted to Hemphill, because, as Murchison testified, he considered the latter "the whole company." It was signed by Mr. Hemphill and a postcript was added by him. It reads as follows:

"Los Angeles, California
April 15, 1941.

"Mr. R. Bruce Murchison,
"Participant and Trustee for
"Parties Interested in creating
"subcontracting arrangements
"under Plxweve Aircraft Company
"620 West Olympic Boulevard,
"Los Angeles, California.

"Dear Sir:

"This will serve as my agreement relative to subcontracting operations of the Plxweve Aircraft Company in so far as I am personally affected, and in so far as my influence upon the Board of Directors is concerned in the ratification thereof.

"It is my understanding that you contemplate the organization of a company of approximately twenty or twenty-

five thousand dollars, the purpose of which will be to engage in subcontracting work. It is also my understanding that it is the desire of the principals of this enterprise that the efforts toward the completion of the present Plxweve airplane be continued and maintained with the view in mind of obtaining an A. T. C. license.

"It is my understanding that you propose that Plxweve Aircraft Company, a corporation, transfer and assign all of its developments relative to the subcontracting woodwork, and assign all of its machinery and equipment and to pay therefor, and its present contract for rental of machinery and equipment, and that the subcontracting company also take on all of the employees now on the payroll, either in the engineering division or in the shop.

"That in consideration of the transfer of this development, etc., the subcontracting company will be entitled to use the name 'Plxweve Manufacturing Company' or 'Plxweve Contract Company', and in consideration thereof will undertake to continue with due diligence the efforts directed toward the completion of the Plxweve aircraft for its A. T. C. license, such aircraft being known as NX 19994, for a period of not less than three months. It is the contemplation that this work will cost between $4000.00 and $5000.00, and that in any event $5000.00 will be made available hereunder, if necessary.

"In addition to the foregoing, it is understood and agreed that as a condition to the licensing as herein above specified, the subcontracting company will pay to Plxweve Aircraft Company one-third of the net profits of the operation of the subcontracting company calculated upon ordinary and standard accounting methods, and that the advances for and on behalf of the completion of the plane shall be advances chargeable against earnings under this provision, to-wit: one-third of the net income.

"It is further my understanding that you will forthwith continue the payment of payrolls and other incidental expenses pending the final organization of the subcontracting company.

"It is my further understanding that as a condition precedent to your undertaking, you desire that I as a creditor of Plxweve Aircraft Company, will accept a note from Plxweve Aircraft Company, by the terms of which the sum due me will not become due or payable for at least six months subsequent to the execution of the note and that I will as a director of Aero Industries Technical Institute, Incorpo-

rated, recommend that a note containing similar terms be accepted by Aero Industries Technical Institute, Incorporated.

"It is further my understanding that you will accept a note containing similar terms in so far as your claim against the Plxweve Aircraft Company is concerned, to the end that Plxweve Aircraft Company will have an operating period of six months, at least, prior to the time these obligations become due and payable.

"The consideration for this agreement will be the immediate payment of payrolls under Plxweve Aircraft Company and the continuance of the operations of that company toward the licensing of Plxweve Aircraft plane.

"Wishing you the best of success in this effort, I am

Yours very truly,

(Signed)   RALPH HEMPHILL

"P. S.  I understand your corporate setup for the subcontracting company will be a $25,000.00 paid-in capital corporation."

In the complaint it is alleged upon information and belief "that in the conception and execution of the plan embraced in said proposal and in the consummation of the transactions herein and hereinafter set forth, said defendant Murchison had, and thereafter at all times continued to have, the active aid and assistance and the counsel and support of defendant Greenwood and the other defendants herein, and each and all of the defendants aided and abetted therein as an integral part of said conspiracy." It was also alleged that pursuant to recommendations made by Murchison and because of the trust and confidence reposed in him by Hemphill, the latter signed another letter, reading as follows:

"May 5, 1941

"Mr. Bruce Murchison,
"Participant and Trustee for parties interested
"in creating subcontract arrangements under
"Plxweve Aircraft Company,
"620 West Olympic Blvd.,
"Los Angeles, California.
"Dear Sir:

"Pursuant to our discussion, I am furnishing you with this letter of confirmation which will act as a supplemental

agreement to the agreement set forth in my letter addressed to you dated April 15, 1941.

"It is my understanding that the participants desire to limit the amount of money to be received by Plxweve Aircraft Company under the paragraph and agreement providing for the payment of one-third of the net profits.

"It is agreeable with me personally, and I will exert my influence as a member of the Board of Directors of Plxweve Aircraft Company to obtain the confirmation and agreement by that company that when you have distributed a total sum of $30,000 in profits under the provisions referred to that from and after such time no obligation will thereafter remain for the distribution of or participation in any of the profits in your operation.

"It is understood that this agreement will in no way alter your obligation to advance money and to proceed with the diligence in your efforts relative to the completion of the Plxweve Aircraft bearing license # NX-19994. For the purpose of verification, it is understood that any and all advance made in the completion of the airplane within the limit specified shall be credited as against earnings and as against the $30,000 provision as herein created.

"Yours very truly,

"BM:f                    (Signed)   RALPH HEMPHILL"

Additional allegations refer to a special meeting of the directors of Plxweve Aircraft Company held on May 14th and continued to May 15th, at which resolutions were proposed, putting into effect the agreement covered by Mr. Hemphill's letter of April 15th, as supplemented by the letter of May 5th, and also providing for the delivery of notes to certain interested parties for obligations due them. While these resolutions are inartistically drawn and are not signed by the secretary or chairman, proof was before the court that the letters of April 15th and May 5th were read at the meeting and that the deal thereby proposed was put into effect, including (a) an assignment to the proposed new company of all subcontracting rights possessed by Plxweve Aircraft Company for the sum of $30,000 payable by the new company from one-third of its net profits, (b) a grant to the new corporation by the Plxweve Aircraft Company of the right to use the name "Plxweve" in its corporate title, "Plxweve Manufacturing Company," (c) an assignment to the new company of all right, title and interest in the good will cre-

ated, the development, information, engineering and technical data relative to or connected with woodworking in aircraft subcontracting or construction, (d) the sale to the Plxweve Manufacturing Company of all machinery, hand tools and materials on hand as of May 15th, 1941, at a price to be determined by an appraisal acceptable to the officers of both corporations, and (e) an attempt by the Plxweve Manufacturing Company to complete and license the geodetic type airplane, upon which the Plxweve Aircraft Company had been working for several months, and (f) an agreement to advance sufficient money for that purpose "not to exceed the total sum of $5,000." Further conditions were that Plxweve Manufacturing Company would take possession of all property and assume complete operating obligations, including employees and telephone, as of May 15th, 1941; further, that Aero Industries Technical Institute, Incorporated, Ralph Hemphill, R. Bruce Murchison, Rene Olin and R. E. White would accept notes for any and all sums due them, payable not less than six months after acceptance.

The new corporation, entitled "Plxweve Manufacturing Company," was chartered on May 17, 1941, upon the application of Murchison and his collaborators, and the transfers, above mentioned, of property and personnel, were all promptly effected. Thereafter, there was expended by the new corporation in the effort to complete the geodetic type airplane a sum exceeding $5,100, but the subcontracting business which had been expected failed to materialize in any substantial amount, no profits were declared, and within a few months the new company was insolvent. The desired license for the operation of the plane was not obtained and a representative of a Minnesota corporation finally exercised an option for the purchase of all outstanding stock of Plxweve Manufacturing Company. This stock had been ordered escrowed by the Corporation Commissioner and all transfers under the option were approved by him. For 4,250 shares of stock which had been allotted to Mr. Murchison he received $850, and Mr. Greenwood for his 4,250 shares received the same amount. That sum of money appears from the record to constitute the only "profits and advantages" derived by them or either of them from the enterprise. Whether they were obtained by means of "unconscionable transactions" depended upon the view which the court took of the conduct of defendants Murchison and Greenwood and, as already indicated,

that view was contrary to the one entertained by the appellants. They complain that "The trial court committed prejudicial error in finding adversely to the plaintiffs on the issues of non-disclosure, undue influence, unfair dealing and constructive fraud, because the defendants not only did not overcome the applicable presumptions of law relating to such issues by clear and satisfactory evidence, or any evidence at all, but they by their own testimony proved each of such issues in the plaintiffs' favor."

Our attention is directed to a former appeal in this case, reported in 61 Cal.App.2d 21 [141 P.2d 933], where this court, sitting in Division One, held that the trial court had erred in entering a judgment of dismissal upon sustaining a demurrer to the second amended complaint without leave to amend. In the opinion written in that case, it was stated (p. 23) that according to the complaint "Respondent represented to appellant Hemphill that respondent would have only a nominal interest in the new corporation; and it is alleged that appellant would not otherwise have entered into the transaction. It is also alleged that respondent 'intentionally refrained from making known, and expressly refused to make known' the identities of the parties interested in the transactions in question. The deal to sell the assets of appellant corporation was ratified by the board of directors; and through thus gaining control of the assets, the defendants obtained secret profits and advantages in excess of $10,000, according to plaintiffs' information and belief." The opinion then continues, "Are the allegations set forth in substance above sufficient to found a cause of action to establish an involuntary trust, where a relation of trust and confidence, as between attorney and client, existed between defendant and plaintiff?" Quoting from *Cooley* v. *Miller & Lux,* 156 Cal. 510, 523, 524 [105 P. 981], the court stated: "The rule is well established that the relation of attorney and client is confidential in character and that any contract entered into between them while that relation continues, *whereby the attorney obtains an advantage from the client,* is presumed to have been made by the client under the undue influence of the attorney." And quoting from *Metropolis Trust & Sav. Bank* v. *Monnier,* 169 Cal. 592 [147 P. 265], cited in *Clark* v. *Millsap,* 197 Cal. 765 [242 P. 918], the statement is made that "The relation of attorney and client is of a fiduciary character, and the Civil Code (sec. 2235) clearly provides that

all transactions between a trustee and his beneficiary during the existence of the trust, *by which he obtains any advantage from his beneficiary,* 'are presumed to be entered into by the latter without sufficient consideration and under undue influence.' This does not mean that a trustee may not deal with his beneficiary. But if he does deal with him *in such manner as to obtain an advantage,* the trustee has the burden of showing by evidence that the transaction was fair.'' (Italics added.) (See, also, *Sanguinetti* v. *Rossen,* 12 Cal.App. 623 [107 P. 560].)

It will be seen from these quotations and from the portions thereof which we have italicized, that a very important point affecting the relation of attorney and client is to determine whether the attorney by his action and advice gained an advantage over his client. In the instant case it was alleged at great length and repeatedly that by their conduct both Murchison and Greenwood received unfair and unconscionable secret profits and advantages. But the trial court, upon the evidence produced including correspondence between Murchison and Harper, found: ''That it is true that the defendant R. Bruce Murchison, on or before the 15th day of April, 1941, advised the plaintiff Ralph Hemphill that he and Guy Harper and Richard *Olson* were among the persons to be interested and who did participate in the proposed new venture which resulted in the formation of the defendant corporation; that it is true that the defendant R. Bruce Murchison repeated said statements at all times when this matter was discussed, and the defendant R. Bruce Murchison advised the board of directors of the plaintiff Plxweve Aircraft Company at its meetings held on May 14 and May 15, 1941; that the court further finds it to be a fact that the defendant R. Bruce Murchison, at all times prior to and at meetings of May 14 and May 15, 1941, made a full and complete disclosure of all material facts then known to him with respect to the proposals and with respect to the formation of the proposed new corporation and of the persons to be interested and to participate in the new venture. The court further finds it to be true that the plaintiff Ralph Hemphill expected the defendant Allan D. Greenwood to participate in said new venture. That none of the allegations contained in any of said paragraphs is true except as specifically found to be true.'' The foregoing statement is distinctly contrary to the statement in the appellant's open-

ing brief that the court made a finding that said defendants obtained advantages out of the transaction for themselves.

We note particularly in the finding just quoted the statement that Mr. Murchison made a full and complete disclosure "of all material facts" then known to him concerning the proposals, the formation of the proposed new corporation and the participants therein. This must mean that the court was of the opinion that certain matters complained of by the appellants were actually immaterial or presented no sound basis for complaint. For example, Mr. Hemphill testified that Mr. Murchison told him that he intended to invest only a nominal sum in the new corporation in order to encourage the other prospective stockholders and that he was surprised later to learn that Murchison had acquired a substantial interest in the new corporation and was the president thereof. There seems to have arisen in the minds of the appellants the idea that the declaration by Murchison that he contemplated the investment of only a nominal sum of money debarred him from acquiring a substantial interest. That, of course, does not follow. Some complaint is made by the appellants that Murchison was guilty of misrepresentation in connection with the issuance to him of stock in the new corporation. Our attention is called to the fact that in the application for the permit Mr. Murchison represented that he was entitled to the shares of stock, which were actually issued to him in escrow, because of his success in bringing together the organizers of the corporation, some of whom, like Greenwood and White, intended to devote their engineering ability, and others of whom, including Harper and Olesen, agreed to buy $10,000 worth of stock. As a matter of fact, it appeared that in addition to Mr. Murchison's organizing efforts, he actually contributed to the new corporation free of rent for a period of six months the use of buildings which he erected upon a tract of land belonging to him; but it is difficult for us to see how this additional contribution by Mr. Murchison gave rise to any real grievance on the part of Mr. Hemphill or any other stockholder of the Plxweve Aircraft Company. In this connection we have in mind that Mr. Murchison was not only attorney for that corporation but was also its creditor in the amount of approximately $3,000 and was a stockholder owning 1,771 shares, for a portion of which he had actually invested cash in the sum of approximately $2,500. It is obvious that if Mr. Hemphill suffered any injury by reason

of the transfer arranged and effected by Murchison and his collaborators, Murchison suffered proportionately. But it does not appear that anyone suffered any loss or injury by reason of the plan developed largely by Murchison.

Although now Mr. Hemphill feels that the transaction was unconscionable and unfair, he testified at a deposition taken in January of 1944 that ''I feel that the price was fair and equitable to our corporation, and it was equitable to the purchasers.'' On other occasions he testified similarly, but at the hearing he finally testified that ''The amount of money consideration I don't think was fair because I put up $30,000 in cash, and everybody got money out of the deal, and these fellows didn't take me into consideration at all. They took Harper in, with practically no money in our company, he got his stock for nothing. I was the one that put up all the money, and if there was somebody in the new deal, if it was going to be advantageous to anyone, it would have been Mr. Greenwood, and Mr. Murchison failed to divulge to me, to let me in on certain activities that did occur, but I was never so advised.'' As a matter of fact, Harper received his stock in the Plxweve Aircraft Company as a gift or repayment from Mr. Greenwood for assistance rendered to him while the latter was engaged in developing his geodetic aircraft in Portland; and for the stock which he received in the Plxweve Manufacturing Company he and his son and Olesen paid $10,000 cash. If Mr. Hemphill desired to purchase stock in that corporation undoubtedly he could have done so by merely expressing his desire, but he had not the slightest interest in buying stock in a company that contemplated manufacturing or subcontracting for airplane parts of wood-plastic construction. Mr. Greenwood testified to that effect, saying that ''Ray White and Curtis Bates and I went up to his home and took a bunch of blue prints that I accumulated, spread them out on the rug and he said he wasn't even interested.''

It is apparent from the last quotation from Mr. Hemphill's testimony that he feels aggrieved because he was not given stock in the new corporation, but as we read the record there was no theory upon which he could acquire an interest therein except by paying cash for stock; the others to whom stock was issued contributed either cash or something of value to the corporation, and he, through lack of interest, contributed nothing. While in Murchison's letter of April 25, 1941, it

appears that he and the other parties interested had agreed as to how the stock in the new corporation might be distributed, that agreement, of course, was subject to the approval of the Corporation Commissioner. Apparently it was considered inadvisable to anticipate such action by making any complete statement relative thereto and it is evident that the trial court took the view that this phase of the proceedings was not material.

Upon reading the transcript in its entirety and after a careful consideration of the evidence, written and oral, that was before the trial court, the salient points of this case may be summarized as follows: Upon Mr. Hemphill's decision, expressed on several occasions, not to invest additional funds in Plxweve Aircraft Company, either by purchase of stock or by advances, it fell to Mr. Murchison's lot to undertake, at Mr. Hemphill's suggestion, the securing of new capital. This he did by arranging with the Portland group to finance the plan outlined in the letters which we have quoted. An honest effort was made thereafter to conform in every particular with this plan, and while the roseate hopes of the interested parties were not accomplished, it cannot be denied that the stockholders of Plxweve Aircraft Company gained advantages from that plan, for they were relieved of the necessity of finding additional capital to be expended toward the completion of their pet project, the geodetic airplane. That burden was taken from them by the new corporation which furnished them with the decided advantage of expending more than $5,000 toward the desired end, and the plane still belongs to them, Plxweve Aircraft Company. There is nothing in the record that we can discover to indicate that Murchison or Greenwood or anyone else obtained any advantage whatever over Mr. Hemphill. The trial court was in the same position and found ''it to be a fact that the contract entered into between the plaintiff Plxweve Aircraft Company and the defendant Plxweve Manufacturing Company, as set forth and referred to in plaintiffs' second amended complaint, was fair and equitable and that no unfair advantage was obtained from the plaintiffs, or either of them, but to the contrary it was exceedingly advantageous to the plaintiffs and each and all of them.''

Many points of interest and enlightenment in connection with this case may be gleaned from a perusal of excerpts from letters which passed between Murchison and Harper while the

plan proposed by the latter was under consideration. These excerpts are appended in the accompanying footnote.* They clearly indicate first, Mr. Murchison's recognition of the obli-

*Excerpt from Murchison's letter of March 28, 1941, to Harper:

"The corporate structure is a little different picture. Mr. Hemphill has advanced his $30,000.00 and expended approximately $2,000.00 over that *some*. In addition to this sum, Aero I. T. I. claims a bill of approximately $14,000.00, which upon audit will be reduced to approximately $12,000.00, and I have advanced to date $2,000.00, and intend to advance another week's payroll of approximately $350.00 for the employees now on the payroll. I have suggested to Mr. Hemphill and to Aero that we share the present payroll load equally but this suggestion has been flatly rejected. . . .

"One of the reasons why the corporation is in its present condition is that after Mr. Hemphill's deal with Angel fell through, he announced that he was not going to put up any portion of the money which he had subscribed for on this second issue and advised me that it would be up to me to endeavor to obtain people who would invest in the enterprise."

Excerpt from Harper's letter of April 4, 1941, to Murchison:

"It seems to us that the wood-working contracts and the future of the plane itself are two separate problems. . . . With respect to the wood-working possibilities, it seems to us that there is an opportunity to make very substantial profits along this line. The minimum of delay and investment would be brought about by making a contract with a wood-working outfit to manufacture your requirements. If this were not possible, it would not entail a very large sum of money to secure a suitable location and install the necessary machinery. Olesen, Dick and I would be willing to contribute funds, along with you and others who may become interested in the project, for the purpose of acquiring and installing the machinery necessary, provided, of course, that suitable contracts could be secured on a basis that would return a normal operating profit. We must recognize that this is a temporary and emergency operation and fixed investment should be held to a minimum. . . . I assume from our talk that Mr. Hemphill would not wish to participate further in the management of the plane, nor to become involved in the wood-working operation. If such is the case, in order to compensate Plxweve for funds which it has paid out or obligated itself to pay for engineering data, etc., my thought would be to form a separate corporation which would in turn contract with Plxweve for the use of engineering studies, plans, etc., to be compensated for by, say, one-third of the net profits accruing from the wood-working corporation, the new corporation to retain the remaining two-thirds. Such a plan would provide Plxweve with some income to discharge its obligation to Hemphill and Aero."

Excerpt from Murchison's letter of April 9, 1941, to Harper:

"After my return to the South, I find somewhat of a difficult condition relative to Plxweve. I believe I previously advised you that for the last 30 to 45 days I have been personally advancing the necessary funds to keep the organization operating. Mr. Hemphill has taken the positive stand that he would not advance any further sum regardless of whether he lost his investment or not. This stand is taken purely because of personal reasons rather than in any way relating to the merits or demerits of the Plxweve operation.

"Of course, in considering this problem, we must also take into consideration the fact that Aero I. T. I. has already extended credit to the amount of approximately $12,000.00, which in all probability will fall back on Mr. Hemphill's shoulders in the event it is not repaid. At least

gations that were due Mr. Hemphill for his financing the original company and securing advances from his other company, Aero Industries Technical Institute, Incorporated; second, his bona fide interest in workinig out an established system by which it was hoped and believed that success might be obtained.

A discussion of the matters complained of by the plaintiffs would not be complete without a reference to case No. 480731, entitled ''Plxweve Aircraft Company, a corporation, vs. Plxweve Manufacturing Company, a corporation,'' which was called to the attention of the trial court by the filing, while the instant action (Superior Court No. 480732) was on trial, of

that is Mr. Hemphill's present argument as to why he should not advance further sums. In addition to that sum he has advanced $2500.00 over the agreed $30,000.00. . . . I have again contacted Mr. Hemphill's office to determine his attitude, and find that it remains unchanged.''

*Excerpt from Harper's letter of April 11, 1941, to Murchison:*
''Enclosed is my check in the amount of $1,000.00 which is contributed equally by Kay Olesen and myself. . . . It seems clear that Mr. Hemphill is a creditor of Plxweve to the extent of funds furnished by him in excess of $30,000.00, which was his contribution for the stock he received. It is equally clear that Aero is a creditor to the extent of advances made by it to Plxweve under the agreement between the parties. Undoubtedly, Aero could move against Plxweve and cause its assets to be sold in satisfaction of its debt. If this were brought about, then all the stockholders would be wiped out and Aero would have the plane, plans, engineering data, etc., pertaining to the plane. Bearing this in mind, we naturally do not care to advance funds for further engineering on the ship unless it is understood that we rank as equal creditors with Mr. Hemphill and Aero. . . . We would not object to a portion of these advances going for engineering and other expenses incident to the securing of the certificate.''

*Excerpt from Murchison's letter of April 17, 1941, to Harper:*
''This will acknowledge your letter of April 11th with the enclosed check. I appreciate the cooperation and confidence you are extending me in this matter and I feel reassured of the success of the enterprise.

''Immediately after receiving this advice, I contacted Mr. Hemphill and the Aero School in an effort to determine what their attitude would be toward the efforts contemplated and found that after a thorough discussion with Mr. Hemphill that he was agreeable to the proposition.

''Enclosed you will find a copy of the agreement which he signed, which essentially is a preliminary agreement and which requires a Board of Directors meeting of Plxweve in order to verify. Having obtained his signature on this agreement, however, I feel certain that the balance of the arrangements can be completed without further complication.

''I have deposited the check you forwarded in the California Bank as a trust account and have drawn the first week's wages which amount to $287.03. In addition, I have advanced to Allan Greenwood the sum of $200.00. This I did for the reason that he is in a bad personal position at the moment and his assistance and participation is essential in continuance of the contemplated operations.''

*Excerpt from Murchison's letter of April 25, 1941, to Harper:*
''I have had the pleasure of a conference with your son, Richard, and Mr. Kay Olesen, with respect to the Plxweve deal and I am writing to

an "amendment and supplement to the second amended complaint." In this supplement it was charged that as a part of the conspiracy engaged in by Messrs. Murchison and Greenwood the resolution of May 14, 1941, was drafted in the form in which it was presented and adopted by the board of directors of Plxweve Aircraft Company for the purpose ultimately of enabling the new company that was to be formed to escape liability either for the payment of a portion of net profits or otherwise. An accounting and declaratory relief was sought in that action (No. 480731), which was filed on October 2, 1942, the same date upon which the instant case (No. 480732) was filed. The defendant Plxweve Manufacturing Company denied that it had entered into any written contract or agreement with the plaintiff Plxweve Aircraft Company as, indeed, it had not, for it was not in existence at the time the resolution was adopted on May 14th. But the court in its findings added "It is likewise true that Plxweve Manufacturing Com-

---

you for the purpose of recording my understanding of the tentative agreements and for the purpose of acquainting you with the details of our discussion.

"It has been tentatively agreed that the respective interests of the parties involved in a new corporation to be formed in accordance with the letter I hold from Mr. Hemphill would be as follows: Mr. White, Production Engineer, five per cent; Mr. Bates, Chief Engineer, ten per cent; five per cent left in the treasury for distribution to other deserving employees and sixteen per cent each to Allan Greenwood, yourself, Dick, and Kay Olesen, and sixteen per cent to myself.

"The consideration for this division would be with respect to Mr. White, a partial financial contribution, which I will work out with him, either in his advancing money for materials or the waiving of certain salaries during the preliminary steps. As to Allan Greenwood and Mr. Bates, this will be an outright contribution as security towards their continued cooperation in the enterprise. As to the interests of yourself, Dick and Kay, it is my understanding that you will advance a sum of not less than $10,000.00 over a period of 60 to 90 days, this sum to be used for the purpose of paying payrolls that become due, for the development and completion of the airplane in accordance with the terms of the letter I have referred to, for the purpose of purchasing approximately $4000.00 worth of woodworking machinery and equipment, and for the purpose of purchasing drafting boards and other supplies. That in the event it is necessary, an additional $5000.00 would be advanced only in the event it became necessary to maintain the operation for a period of six months, and our judgment still dictated that it was a good deal.

"The consideration for my stock would be the fact that I will make available to the Plxweve Company a building on property adjacent to Lockheed Air Terminal, the building to be approximately 80 by 100, and that I will furnish this building rent free for a period of six months, provided, however, that if and when the company is operating and producing sufficient revenue above salaries and other operating expense, that in that event the company will commence the payment of rent and continue thereafter during such term as they remain in possession of the building."

pany performed certain acts in ratification and confirmation of its said agreement with the plaintiff corporation'' etc. Although, as found by the court, no formal contract was signed, the Plxweve Manufacturing Company disposed of that case by filing a stipulation for judgment by which the Plxweve Aircraft Company obtained a settlement agreement in the sum of $12,500. We have found no evidence in the record of any reprehensible conduct on the part of Greenwood or Murchison in connection with case No. 480731.

Possibly, mention should be made also of action No. 483395, filed February 2, 1943, entitled ''R. Bruce Murchison, Plaintiff, vs. Plxwere Aircraft Company, Defendant,'' in which Mr. Murchison prayed judgment upon a promissory note for the sum of $2,956.13, with interest and for attorney's fees in the amount of $600. Murchison's ''Seventh, Separate and Distinct Defense and Set-Off To And Against Plaintiffs' Second Amended Complaint,'' in the instant action (No. 480732), stated ''That on or about the last day of March, 1943, the above-mentioned action [No. 483395] was consolidated for trial with the present action [No. 480732]. That this answering defendant incorporates herein by reference his complaint, and each and every allegation therein contained, with the same force and effect as though the same were set forth in full herein.'' Findings thereon were as follows: ''Respecting the allegations contained in the seventh, separate, and distinct defense of defendant R. Bruce Murchison . . . The court finds the allegations of said defense to be true.'' Shortly after judgment in the instant case was entered on December 19, 1944, the court on its own motion set case No. 483395 for further hearing on May 3, 1945, but on being advised that an appeal had been claimed in the instant case granted defendant's motion for a stay of all proceedings in case No. 483395 pending final determination of cause No. 480732. That stay is still in effect, but for the reasons hereinbefore outlined the appeal fails and we hereby order the judgment in the instant case affirmed.

Shinn, J., and Wood, J., concurred.