E. D. GILLIS, Appellant,

v.

Etta T. GILLIS, Appellee.

No. 16965.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 22, 1968.

Rehearing Denied Dec. 20, 1968.

Garrett, Garrett & Callaway, and Rufus S. Garrett, Jr., Fort Worth, for appellant.

Lattimore & Lattimore, and Hal M. Lattimore, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

A divorced husband has appealed, asserting that pursuant to the decree of divorce the trial judge mistakenly awarded the wife an amount predicated upon a value of what was treated as a portion of the community property when such did not have the character of property subject to division under the provisions of Vernon's Ann.Tex.Civ. St. Art. 4638, "Division of property". The wife's right to a divorce is not attacked.

Affirmed.

The thing which the trial court treated as property was the right(?), title(?), and interest(?) of the husband, E. D. Gillis, in and under his contracts to manage two mutual insurance companies, Texas Hospital Service Insurance Company and American Health and Accident Insurance Company.

Evidence in the record discloses that in 1963, in order to become the manager of said companies, i. e., in order to obtain the managerial contract, Gillis paid out of what would have been the community funds of the parties a substantial amount in money and contracted in such manner that A. M. and R. D. Croy not only received the same, but acquired the right to thereafter receive (for a stipulated period or until a stipulated total amount would be paid), money which would otherwise have been paid to or have become the entitlement of Gillis. The stipulated period has expired and the stipulated amount has been paid.

A. M. and R. D. Croy were the predecessors of E. D. Gillis as managers, under contract, with and for the two mutual insurance companies aforementioned. The consideration delivered by them pursuant to the arrangement made with Gillis was their yielding and "stepping out" as managers of the companies with Gillis "stepping in".

■ Though we should agree with the contention that the thing treated as property by the trial court did not at law have the necessary characteristics which would make it such, yet we believe that the trial court could not be said to have erred in so treating it under the principles of equity jurisprudence. Community funds were expended in acquiring the position of manager. Its enjoyment by Gillis, along with the fruits which the evidence shows to have been and will continue to be derived therefrom by him certainly have a value. Since the evidence discloses its marketability to deny the trial court a right to treat as community property the value thereof, as of date of the divorce decree, would permit the wife to suffer a grievous wrong. Equity regards the substance rather than the form of agreements; looks through superficial fictions; looks to the substance and not the shadow, and to the spirit and not the letter; abhors technical rules and restrictions, etc. Equity acts to do justice between two parties to a transaction or series of events, irrespective of how complicated they may be, and a court of chancery rejects all shades of sophistry and subterfuge as it seeks to ascertain and give effect to true intent and meaning. 22 Tex.Jur.2d, p. 583, "Equity", Sec. 40, "Equity regards substance rather than form."

■■ Furthermore, in view of the evidence in the case to the effect that the managership of the husband comprises a "species" of valuable right and interest, coupled with the history of V.A.T.S., Art. 4619, "Community property", and the amendments thereto (which clearly shows that the Legislature intended to give the term "community property" a broader

meaning than was originally given), we hold that such constitutes a part of the property of the parties subject to division upon divorce under V.A.T.S. 4638, "Division of property". Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307 (1943). See also 73 C.J.S., p. 135 "Property" § 1, "Definition and Nature"; 27 Tex.Jur.2d p. 202, "Goodwill", Sec. 2, "Nature", and Sec. 3, "Sale or transfer". Of interest in this connection is Herring v. Blakeley, 385 S.W.2d 843 (Tex.Sup., 1965), reviewed at 44 Tex.L. Rev. 860.

Of the foregoing the finding and treatment of said subject as community property was supported by and not contrary to the greater weight and preponderance of the evidence.

Upon request therefor the trial court made and filed Findings of Fact and Conclusions of Law, and upon subsequent request made and filed further findings and conclusions. The court's order was entered showing refusal to make further findings and conclusions made by Gillis, with fact that bill of exception was taken to such refusal. Points of error are founded upon the refusal to make certain additional findings and conclusions. We hold that none were essential and upon the record presented to this court there was nothing connected with the refusal which prevented a full and fair presentation of any error of which Gillis might complain. The findings and conclusions which were made and filed covered the controlling issues.

The contentions sought to be made were adequately presented by Gillis' points of error for purposes of consideration on appeal. Generally the contentions assert that there would be something illegal, immoral or improper in the procedure necessary to be undertaken by Gillis for the "value" of his management contract with the insurance companies to become substance by way of property in his hands, either as the result of a sale similar to that as result of which Gillis became the manager, or by way of their conversion from mutual to stock companies.

We confess amazed enlightenment upon the matter of realizable profit for a person in a position such as that enjoyed by Gillis. Even in "olden times" there was considerable difficulty attendant to the historical "trading" of public office, such as in an instance as here a public officeholder, for a consideration, stepped down in favor of another who desired and was able to secure the appointment to supplant him for the remainder of his term, etc. No comparable difficulty attended the transaction(s) pursuant to which Gillis obtained his managerial offices. But for laws forbidding, or decisions declaring such to be contrary to public policy, trafficking in sale of public office might still be lawful. It is not averred that there was anything improper or illegal in Gillis' acquisition of the management contracts from his predecessor(s). (Of interest was the news several years ago that "bellboy" jobs at hotels in Las Vegas were being "traded" for considerations running near the approximate figure of $1,000.00.) What is claimed is that there would be impropriety or illegality for Gillis to attempt to convey the management in the manner the Croys acted in the transaction where the conveyance had been made to Gillis.

Observable from the record in this case is the fact that trading of management contracts has long been a rather common practice in respect to insurance companies of the type under consideration. There is competent evidence of record to show that the office of manager (i. e., the right to succeed to such under a managerial contract) is a marketable commodity having ascertainable value, measurable by examination into the current state of the company and its contracts with policyholders.

In any event, though we might deem as absolutely void at law, or contrary to applicable Rules, the very sort of transactions which would—from a practical standpoint—enable Gillis to gather into his hands tangible funds or properties by the sale of his managerial contract(s), yet under applicable equitable principles would we

uphold the trial court in its treatment of such as community property. The same would apply though Gillis may have contracted not to enter into that kind of transaction. To do otherwise—and disregard the real and actual value thereof in the disposition of property upon divorce—would be to effect an injustice upon the wife, in that fraud would be perpetrated to her loss and her divorced husband's profit. We do not believe that the wife could be thus legitimately defrauded. Equity would not allow the imposition of a statute or legal rule to be used as an instrument to accomplish injustice though their enactment or promulgation be intended to prevent fraud. 30 C.J.S., p. 1079 "Equity" § 106, "Equity Regards That as Done Which Ought to Be Done"; Harrison v. Patterson, 50 A. 113 (New Jersey C. of Chancery, 1901); Williams v. Volz, 131 Neb. 392, 268 N.W. 300, 304 (Neb.Sup., 1936); Sanguinetti v. Rossen, 12 Cal.App. 623, 107 P. 560, 562 (1906).

Under statutory authority (see V.A.T.S. Insurance Code, Art. 14.39) the State Board of Insurance, November 19, 1960, adopted certain Rules. One was Rule VIII, "Operation and Management of Companies and Associations". Under subdivision A–7 thereof it is provided: "No officer, director, agent, manager or employee of a company shall pay or receive, directly or indirectly, for his personal use or benefit, anything of value as consideration or partial consideration, for the resignation or election of an officer or director of any such company, or for transferring or assigning proxies or appointing a substitute in connection with any proxies, or for the sale of any asset of whatever kind or character belonging to such company or association."

The foregoing Rule was among those promulgated for the purpose of correcting an evil mentioned in an opinion of the San Antonio Court of Civil Appeals, to-wit, that some managers " * * * bought and sold these charters as if they were merchandise or articles of commerce." See Hyatt v. Hughes, 221 S.W.2d 998 (San Antonio Civ.App., 1946, no writ hist.). That the "evil" under consideration was not corrected is apparent from the evidence in the instant case. Gillis' acquisition was in 1963. The evidence showed that at the time material for purposes of divorce there had been a substantial increase in the value realizable by Gillis should he elect to initiate conveyance of his management contracts, whereby he would in reasonable probability receive consideration—regardless of the State Board of Insurance and its Rules. Likewise, the same would be true despite the inhibition attendant to Gillis' fiduciary obligation under which he would be prohibited from selling his power of management. We believe there is such fiduciary obligation. Perlman v. Feldmann, 219 F.2d 173, 50 A.L.R.2d 1134 (C.A. 2, 1955) cert. denied, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277.

Under Gillis' management contracts it was stipulated, among other things, that: "Neither of these contracts and no other instrument or agreement provides for any renewal commissions and the agreements are not assignable." In relation thereto, in view of the equitable nature of the case, what we have already stated would have application despite the inhibition of the contract.

We will here note—though we do not believe that it in any way effects disposition of this case—that the evidence shows that in instances where mutual assessment companies have gone into receivership, and where there have been persons who were general managers thereof who have received sums pursuant to sales of General Manager's contracts, such persons have refunded, settled, and paid off whenever the liquidator for the state has gone to court and sued under allegations that the sums so received belonged to the policyholders.

It is established by the record that Gillis has—by virtue of his position under the management contract with the companies (and which would likewise be that of his successor in office)—the right and power,

both legally and as a practical matter, to convert the two mutual companies to stipulated premium corporations in which he would eventually own all of the capital stock. The value thereof was shown sufficiently to support the judgment, assuming that we err in the holding that such was supported by the market value of management contracts. Such right and power would of course be subject to the approval of the existing policyholders and existing Board of Directors, but there is no indication or evidence that the policyholders or directors would not be agreeable that Gillis effect such form of conversion. There is competent evidence to establish, historically and realistically, that in other cases where such was desired by the manager the directors and policyholders have always been agreeable. In this there seems to be nothing illegal, immoral or improper in the eyes of those authorities chargeable with regulatory or supervisory duties.

Recognizing the impracticality of framing a judgment which would award and make immediately payable to the divorced wife of E. D. Gillis a sum of $100,000.00 the court found as a part of her entitlement, the provision of the judgment relative thereto read, as follows: "E. D. GILLIS IS ORDERED AND DIRECTED to deliver to Etta T. Gillis $109,668.60, provided, however, that E. D. Gillis may satisfy the decree of this Court in this regard by delivering forthwith to Etta T. Gillis the sum of $9,668.60, and, as to the remaining $100,000.00, by E. D. Gillis' delivering to Etta T. Gillis the sum of $975.90 on the 1st day of each month hereafter until this order as to the said $100,000.00 is discharged together with 6% per annum on the unpaid balance thereof."

■ Gillis contends that the award of $100,000.00 thus made payable is an award of future alimony. Having decided that Gillis' management contract should be considered as community property, and having determined the value out of which the divorced wife was granted an award of the $100,000.00, the fact that the judgment thus

provided for its payment would not constitute it a grant of alimony prohibited by law. If it is paid out of his future earnings it will be because he elects to pay it therefrom, not because he would be compelled to do so.

We hold that there was no abuse of discretion on the part of the court in its award of property and rights to the divorced wife.

It is believed that the foregoing discussion covers all of the points of error presented on the appeal. In any event they have been severally considered and are overruled.

Judgment is affirmed.