Filed 12/29/22  Laudero v. Hill CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CHARITY LEE LAUDERO,<br>     Plaintiff and Respondent,<br>v.<br>JEREMY RYAN HILL,<br>     Defendant and Appellant. | A163819<br><br>(Mendocino County<br>Super. Ct. No. SCUKCVG1973693) |

Defendant and appellant Jeremy Ryan Hill appeals following a bench trial in which the trial court found in favor of plaintiff and respondent Charity Lee Laudero, his former unmarried cohabitant.  The trial court found that Hill breached the parties' agreement to share their savings and assets and ordered that Hill pay Laudero $350,000 as her share of their joint savings and transfer title of their prior shared residence to her.  Hill contends that the trial court erred in finding that he possessed at least $800,000 in buried cash and in imposing a constructive trust on real property based on fraud.  We affirm.

## BACKGROUND

### I.

### *Relevant Facts*

Hill and Laudero were in a 10-year relationship from 2009 to 2019.  Prior to that, Laudero was in a relationship with Justin Manus.  Laudero and

1

Manus have two children together, both of whom have disabilities and rely on Medi-Cal for their health care needs. In 2002, Laudero and Manus leased a 23-acre property located at 2270 Spyrock Road in Laytonville, California (Property) with an option to purchase. The purchase price was $225,000. In 2004, Laudero and Manus decided to purchase the Property and the sellers transferred title of the Property to them as joint tenants. Laudero and Manus also executed a deed of trust that secured a $177,000 balance that was owed on the Property. In November 2008, Laudero and Manus's relationship ended and in January 2019 Laudero moved out of the Property with her two children and into a trailer. Manus remained at the Property and agreed to make the mortgage payments in lieu of paying child support to Laudero.

In early 2009, Laudero began dating Hill. Hill soon moved in with Laudero and the two quickly established their respective roles in the relationship. Hill insisted that as a man, his role was to provide for the family financially while Laudero's was to tend to the children and the household. Hill did not want Laudero to work outside of the home. The understanding was that they would share whatever they built together. Around this same time, Laudero grew 10 marijuana plants behind the trailer. Hill processed and sold this marijuana and then buried the cash profits in the ground. Laudero trusted Hill to handle the finances and considered the money as belonging to both of them. Hill also began growing marijuana at the Property, with Manus's consent. Despite profiting from these marijuana sales, the couple lived frugally.

In 2013, Laudero learned that Manus was delinquent on the mortgage payments for the Property. The sellers of the Property informed Laudero they would proceed with a foreclosure unless she wanted to continue paying

2

the mortgage and have Manus move out.  Laudero did not want to lose the Property and agreed to take over the mortgage payments.  Manus agreed to transfer his interest in the Property to Laudero so long as the Property went to their children when they were older.  Laudero promised Manus that it would.  At Hill's suggestion, Laudero offered and the sellers agreed to accept $100,000 in cash as payment of the deed of trust in full.  Laudero understood and the trial court found that this $100,000 belonged to Laudero and Hill equally.

On December 3, 2013, Manus deeded his interest in the Property to Laudero.[1]  On this same day, Laudero deeded the Property to herself and Hill as joint tenants, with the understanding they were building a family together.  Both deeds were recorded on December 5, 2013.  On December 6, 2013, Laudero and Hill met the sellers and paid them $100,000 in cash.  Soon after this, Hill told Laudero he was concerned her children might lose their Medi-Cal benefits if Laudero's name was on the Property since the Property was paid off in full.[2]  Laudero initially responded that she was not comfortable deeding the Property to Hill, but Hill promised he would " 'never take the land from [her] and the kids' " and that her name would go back on the deed once Medi-Cal was no longer an issue.  Hill further told Laudero that if they got married in the future, the Property would become their joint property.  On December 9, 2013, Laudero executed a deed that transferred her interest in the Property to Hill.  Hill did not pay Laudero any consideration for this transfer.  The couple then moved into the Property in mid-2014 and had a son together in 2015.

---

[1]  Manus passed away some time in 2020.

[2]  At trial, Hill denied that he had any discussions with Laudero regarding Medi-Cal benefits around this time.

After moving into the Property, Laudero and Hill continued to grow and sell marijuana, with an estimated 40 plants at the Property in 2014. Hill also grew marijuana on his friends' properties. Hill stored the money made from the marijuana sales into ammo cans and buried them in the ground as savings. A minimum of $100,000 went into each can and Laudero at one point in 2017 saw and helped transport seven cans after Hill dug the cans up following a fire at the Property. In late 2018, Hill told Laudero he estimated they had between $800,000 and $900,000 saved. Despite these savings, Hill and Laudero were very frugal with their money as they wanted to ensure they had enough for retirement.

In April 2019, Hill told Laudero to pack her things and get out of the house after he had started seeing a neighbor, who later became his fiancée. Hill gave Laudero $50,000 and she left the Property with her three children. Laudero bought a mobile home and a car with the $50,000. Hill moved in with his now fiancée and let a caretaker reside at the Property, rent-free. Hill alleged that he paid $700 in monthly rent to his fiancée.

## II.

### *The Lawsuit and Trial*

Laudero filed this action against Hill for breach of agreement, constructive trust, quantum meruit, conversion, fraud, declaratory relief, and quiet title. The complaint alleged that Laudero and Hill had "entered into an express oral agreement in which they agreed to treat as joint property the earnings and income, and all property and equity acquired" during their period of cohabitation. The complaint further alleged that Laudero was entitled to at least a 50 percent ownership interest in the Property.

While the subject action was pending, Laudero and Hill were also involved in a family law action regarding child support for the couple's son.

4

On July 23, 2020, Judge Cindee Mayfield issued an order setting the amount of child support Hill was to pay Laudero. In setting the amount, the order concluded that Hill's "net income in 2020 is much more than the $30,000 estimated on [Hill's] Profit and Loss statement . . . and much less than $400,000 estimated by [Laudero's] counsel." Judge Mayfield commented that although she found Laudero's testimony that Hill made significant money growing and selling marijuana credible, Hill "does not live the lavish lifestyle of a person who has $750,000 to 800,000 in cash at his disposal." The judge estimated Hill's annual income to be $93,600 for purposes of setting child support.

On September 30, 2021, following a bench trial, the trial court issued a statement of decision in favor of Laudero. The court found that at the time of the parties' separation in April 2019, Hill "had in his possession at least $800,000 that belonged to both of the parties equally." After giving Hill a credit for the $50,000 he had already given Laudero, the court ordered Hill to pay $350,000 to Laudero as her share of their joint savings. In response to Hill's request for an explanation of the collateral estoppel effect of Judge Mayfield's finding, the court stated, "the issues raised in the family law case addressed income for child support at the point of time the mother requested child support for the minor child. The family law ruling does not bind this court to find that the income found by the family court at the hearing for child support was the full extent of the assets held by the parties." The court further found that Hill "was not forthcoming in his testimony in the family law matter." Finally, the trial court found evidence of fraud to support the imposition of a constructive trust, specifically, that Hill "obtained title to the real property by manipulating [Laudero] and frightening her about the loss of Medi-Cal for her children and by falsely promising that he would deed the

5

real property back to her  . . . ."  The court ordered that Hill transfer title of the Property to Laudero as her sole and separate property

Hill filed an objection to the statement of decision.  He objected on the grounds that Judge Mayfield's family law finding should have been given collateral estoppel effect by the trial court that Hill did not possess $800,000 in cash.  He further objected to the court's imposition of a constructive trust on the grounds that there was no fraud surrounding the first deed transfer of the Property to Hill and Laudero as joint tenants, as Laudero consented to this transfer and the $100,000 used was the couple's joint money.  Hill now appeals.

## DISCUSSION

### I.

### *Standard of Review*

"We review de novo the trial court's determination that respondent's claims in the instant action are not barred by collateral estoppel."  (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 399.)

With respect to the imposition of a constructive trust, "the propriety of granting equitable relief in a particular case by way of cancellation, rescission, restitution or impressment of a constructive trust, generally rests upon the sound discretion of the trial court exercised in accord with the facts and circumstances of the case."  (*Hicks v. Clayton* (1977) 67 Cal.App.3d 251, 265.)  We therefore apply the deferential abuse of discretion standard in reviewing the trial court's decision.[3]  (See *GHK Associates v. Mayer Group,*

---

[3]  We reject Hill's argument that because we may independently interpret a written instrument, the standard of review should be de novo. The central issue here is whether the trial court abused its discretion in imposing a constructive trust with respect to the first deed transfer to Laudero and Hill as joint tenants.

6

*Inc.* (1990) 224 Cal.App.3d 856, 877-878.)

More broadly, with respect to the trial court's findings, " ' "The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial." [Citation.] "The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." [Citation.] " 'Where [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " ' " (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026-1027.)

## II.

### *Collateral Estoppel Does Not Apply*

Hill contends that the trial court erred in not applying the doctrine of collateral estoppel to the prior finding made by Judge Mayfield in the context of Laudero's request for child support that Hill did not possess $750,000 to $800,000 in cash. We disagree.

### A. Requirements of Collateral Estoppel

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).) Several threshold requirements must first be met before a court applies the doctrine of collateral estoppel. "First, the issue sought to be precluded from relitigation must be identical to that decided in the former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

7

[Citations.]  The party asserting collateral estoppel bears the burden of establishing these requirements."  (*Ibid*.)

With respect to the first requirement, "[u]nless the issue or cause of action in the two actions is identical, the first judgment does not stand as a bar to the second suit."  (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 181.) This requirement "addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."  (*Lucido, supra,* 51 Cal.3d at p. 342.)  With respect to the third requirement that the issue was "necessarily decided" in the former proceeding, "courts have previously required only that the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding."  (*Ibid*.)

### B. The Issues Are Not Identical.

As to the first requirement, Hill has not met his burden in establishing that the issue of the assets he had when the parties separated in April 2019 was identical to the issue decided in the prior child support proceeding.  The issues decided in these two proceedings differed in terms of both subject matter and relevant time period.  The issue decided in this action was how much money Hill and Laudero had saved as of April 2019, the date of the separation and breach.  Following the evidence presented at trial, the trial court found, based on the many marijuana plants grown throughout the couple's relationship, that "the parties had the means and did in fact save between $800,000 and $900,000 as of April 2019."  Accordingly, after crediting Hill for the $50,000 he gave Laudero at the time she left, the trial court held Laudero was entitled to receive $350,000 from Hill based on the parties' agreement.

By contrast, the central issue decided in the prior child support proceeding was what Hill's net income was in July 2020 for purposes of

8

setting child support. In the child support proceeding, the court received conflicting evidence on this point; Hill claimed his net income in 2020 was only $30,000 while Laudero's attorney estimated it was $400,000. Judge Mayfield found Hill's testimony about earning $20 to $40 per hour as a laborer "inherently unbelievable" and his 2018-2019 income tax returns to be "a sham." Though the judge found credible Laudero's testimony that Hill "earned a significant amount of money by growing and selling marijuana," the judge stated that Hill "does not live the lavish lifestyle of a person who has $750,000 or 800,000 in cash at his disposal." As support, the judge pointed to testimony that Hill was still making car payments in 2019, did not purchase luxury items, and owned no real property other than the Property. The judge then estimated Hill's annual gross income to be approximately $93,600 and set an amount for child support based on that income level.

Although Judge Mayfield commented that Hill's lifestyle did not comport with someone who had $800,000 at his disposal, her order did not determine the issue presented here, which was the amount of money Hill and Laudero had saved by April 2019 at the end of their 10-year relationship during which they had cultivated and sold a considerable amount of marijuana. Rather, Judge Mayfield was looking at a snapshot of Hill's activities and lifestyle in July 2020 to determine what his gross monthly income was or could plausibly be based on "a combination of handyman services, marijuana sales from 6 plants, and the rental of 2270 Spy Rock Road." She determined this figure to be $7,800 per month based on the estimate Laudero herself provided.

The judge did not decide whether the parties had any savings or the amount of savings they had accumulated by the time they separated in April 2019. In rejecting the estimate by Laudero's counsel that Hill's net

9

income in 2020 was $400,000, Judge Mayfield remarked that Hill's modest lifestyle did not support that Hill had $750,000 or $800,000 at his disposal. In any event, the court did not decide the issue of whether or what amount of savings there were other than to conclude it did not support either party's claim about Hill's income.

Hill has thus failed to show the amount of the parties' savings was at issue in the child support law proceeding. But it *was* an issue in this case. At the trial, Laudero testified about the amount of marijuana she and Hill grew, the amount they earned by selling it and the fact that she and Hill lived very frugally throughout their relationship to ensure they had sufficient funds for retirement. She also testified they financed their car because a cash payoff of over $10,000 (which was from marijuana proceeds) would have been reported to the Internal Revenue Service and, further, because the financing improved Hill's credit score. Based on all the evidence, the trial court found that Hill and Laudero agreed they would share all the savings they accumulated during their relationship, and that Hill had possession of at least $800,000 that belonged to them equally.

In short, we conclude that the issue presented in this case is not identical to any issue decided in the prior child support ruling and there is thus no collateral estoppel.

### C. The Issue Was Not Necessarily Decided in Prior Child Support Proceeding.

Even if we had concluded the determination of Hill's current income in the child support proceeding subsumed a finding about the fact or amount of his (or his and Laudero's) savings as of the time they separated, his collateral estoppel claim would fail for another reason. Hill failed to establish the third requirement of collateral estoppel: that the issue of his and Laudero's savings amount as of April 2019 was *necessarily* decided in the prior family

10

law proceeding.  An issue was necessarily decided if it was not " 'entirely unnecessary' to the judgment in the initial proceeding." (*Lucido, supra,* 51 Cal.3d at p. 342.)

The record here suggests it *was* entirely unnecessary.  As discussed above, the purpose of the prior child support proceeding was to set the amount of child support to be paid by Hill to Laudero for their son.  The court determined the amount of child support using the uniform child support guideline, which, as it noted, depends on the parties' respective incomes and levels of responsibility for the child.  (See Fam. Code, §§ 4052, 4053, subd. (c); *In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1237.)  In accordance with this, the court took Hill's income and approximate share of time with the couple's son to arrive at a child support amount of $1,193 per month.  Notably, the amount of cash Hill may or may not have had on hand at this time was not a relevant factor in calculating the amount of child support owed.  This is especially true given that the court ultimately determined Hill's income using Laudero's estimate of $7,800 as Hill's gross monthly income.

The law supports this conclusion.  "Regarding a parent's assets, the California Supreme Court has stated, 'Assets at the time of dissolution play little part in the computation of child support.  They may enter indirectly into the calculation in two ways:  (1) In assessing earning capacity, a trial court may take into account the earnings from invested assets [citation]; and (2) a court may deem assets a "special circumstance" ([§] 4057, subd. (b)(5)) that may justify a departure from the guideline figure for support payments [citation].  But these are exceptional situations; the child support obligation is based primarily on actual earnings and earning capacity.' " (*In re Marriage of Williams, supra,* 150 Cal.App.4th at pp. 1237-1238, quoting *Mejia v.*

11

*Reed* (2003) 31 Cal.4th 657, 671.)

Hill has failed to offer any evidence that the court in the child support proceeding determined the extent of the assets Hill had for the purpose of including in his income earnings from any such assets. And it is plain from the record that the court did not address whether Hill's assets justified a departure from the uniform guideline, since it applied that guideline. Its order, which is the only information about the child support proceeding contained in the record, makes no mention of considering Hill's assets for either of those purposes.

In short, any determination of the amount of money Hill and Laudero had saved by April 2019 was entirely unnecessary to the prior order setting child support and collateral estoppel thus does not apply for that reason as well.

## III.

### *The Trial Court Did Not Err in Imposing a Constructive Trust and Ordering That the Property Be Transferred to Laudero as Her Sole and Separate Property.*

Hill next contends that the trial court erred or abused its discretion in imposing a constructive trust and ordering that Hill transfer title of the Property in its entirety back to Laudero. Hill contends he is entitled to joint ownership of the Property with Laudero because there was no evidence of fraud in the inducement with respect to the first deed that transferred interest in the Property from Laudero to Laudero and Hill as joint tenants. The representations regarding Medi-Cal benefits, Hill argues, was made after this first transfer and only supported fraud with respect to the second deed transfer in which Laudero transferred her remaining ownership interest to Hill. We disagree.

12

### A. Background on Constructive Trusts

"A constructive trust is an equitable remedy that compels the wrongdoer—one who has property or proceeds to which he is not justly entitled—to transfer same to its rightful owner." (*Shoker v. Superior Court of Alameda County* (2022) 81 Cal.App.5th 271, 278 (*Shoker*).) "The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing." (*Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980, 990.)

Pursuant to Civil Code section 2224, there are three requirements needed to create a constructive trust: "the existence of a res (property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act [citations]." (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373.) Indeed, "[s]uch trusts are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit, or other variety of fraud, actual or constructive." (*Sanguinetti v. Rossen* (1906) 12 Cal.App. 623, 628.)

### B. Substantial Evidence Supports That Hill Obtained the Property by Fraud.

We review the trial court's express and implied findings made in its statement of decision for substantial evidence and resolve all evidentiary conflicts and reasonable inferences to be drawn from the facts in support of the court's decision. (*Gomez v. Smith, supra*, 54 Cal.App.4th at p. 1027.) We are bound by the trial court's credibility determinations and liberally construe findings of fact in support of the judgment. (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

Based on observing Hill's testimony and demeanor, the trial court found "his denials, explanations, and assertions, in large part, self-serving

and not credible." Contrary to the image Hill attempted to convey, the court did not find him to be "an innocent and unsophisticated adult" and concluded that he "always knew exactly what he wanted and proceeded to obtain it." With respect to fraud, the trial court held that "[b]y manipulating Plaintiff and promising to return her real property to her, which promise Plaintiff reasonable relied upon, Defendant acquired title in his name." The court therefore found the imposition of a constructive trust appropriate, and we agree.

Hill argues that the trial court erred in attributing any fraud to the first deed transfer on December 3, 2013, which added Hill as a joint tenant, since Hill's statements regarding the children's Medi-Cal were made after this transfer. His piecemeal interpretation of the evidence, however, does not capture the full extent of the fraud the trial court found he perpetrated on Laudero to obtain the Property from her. As the trial court concluded, Hill "*always* knew exactly what he wanted and proceeded to obtain it." (Italics added.) We construe this to mean that both steps in Hill's acquisition of the Property were induced by fraud.

Substantial evidence, including reasonable inferences, supports this finding. On the same day Laudero acquired sole ownership of the Property, she added Hill as a joint tenant because she believed they were building their assets *as a family*. Only months earlier, Hill had proposed to marry her. *Hill* was the one who initially suggested that Laudero offer $100,000 to the sellers so the mortgage could be paid off in full because *Hill* "didn't like the idea of owing money." Days later, Hill persuaded Laudero to deed her remaining interest to him by telling her the children might lose their Medi-Cal benefits if she remained on title.

14

Hill denied having said anything to Laudero about Medi-Cal, and testified that he told Laudero that *he* was going to own the Property by himself since *he* had just paid $100,000 for it, and that it would become their joint property if they got married. Although the trial court rejected Hill's testimony at least in part, it could reasonably infer that Hill had already planned to acquire sole ownership of the Property once he learned that she had agreed to take over the mortgage payments and promptly suggested to Laudero that they pay off the Property's remaining $100,000 balance in full. The trial court reasonably could infer that Hill's fraud included not only his undisclosed intent to acquire the Property for himself, his suggestion that Laudero's children would lose their Medi-Cal benefits if she remained on the deed, and his assurance that he would return the Property to her later. The court could infer that his earlier assurances that he and Laudero would be a family, would marry, and would share all their assets were a part of the fraud, since Hill and Laudero never married during the 10 years they were together and when their relationship ended he took almost all their assets for himself. That Hill's plan to acquire the Property was accomplished in two steps, first inducing Laudero to name him as a joint tenant on the deed and then by acquiring full ownership of the Property and through two separate deed transfers—all within the span of a week—does not diminish the scope of Hill's fraud and manipulation.

Lastly, since we find that the finding of fraud and deceit and imposition of a constructive trust were proper, we do not consider Hill's argument that the first deed transfer that added Hill as a joint tenant constituted a novation.

## DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

$\overline{\hspace{4cm}}$
STEWART, P.J.

We concur.

$\overline{\hspace{5cm}}$
RICHMAN, J.

$\overline{\hspace{5cm}}$
MILLER, J.

*Laudero v. Hill* (A163819)

17